[Civ. No. 48840. Second Dist., Div. Four. Feb. 25, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
WILSHIRE INSURANCE COMPANY, Defendant and Appellant.

522

**COUNSEL**

Avans, Lew & Moroney, George L. Avans and Richard P. Moroney for
Defendant and Appellant.

John K. Van de Kamp, District Attorney, Donald J. Kaplan and Eugene D. Tavris, Deputy District Attorneys, for Plaintiff and Respondent.

## OPINION

**JEFFERSON (Bernard), J.**—This case comes to us on an appeal by Wilshire Insurance Company (hereinafter Wilshire) from a trial court's order denying Wilshire's motion (1) to vacate a forfeiture of an appeal bond and (2) to exonerate the bond. Jose Reyna Marron, defendant in a criminal case, had been convicted for a violation of several provisions of the Health and Safety Code. On May 24, 1974, following his conviction, Marron was sentenced to prison for the term prescribed by law. Marron filed a notice of appeal from the judgment of conviction and the trial court fixed bail on appeal in the amount of $5,000. Wilshire issued and posted a surety appeal bail bond for Marron in the sum of $5,000 to secure his release on bail pending appeal.

Marron's appeal from his conviction was unsuccessful. The judgment of conviction was affirmed and the remittitur was filed with the trial court on August 29, 1975. On September 3, 1975, a letter from the clerk of the superior court informed the agent of Wilshire of the receipt of the remittitur and that Marron should be surrendered for execution of the judgment and sentence.

On September 17, 1975, defendant Marron, with his attorney, appeared in Department 129 of the Los Angeles Superior Court, which was the department indicated for Marron's surrender for execution of the judgment and sentence as set forth in the clerk's letter of September 3 to Wilshire's agent.

A reporter's transcript of the proceedings of September 17, 1975, in department 129 establishes that the trial judge called the case of People against Jose Reyna Marron at 1:50 p.m. Present were defendant Marron, his counsel and a deputy district attorney representing the People. The reporter's transcript indicates that the defendant made a motion for a stay of execution of the sentence in order to allow him to file a petition for a writ of certiorari with the United States Supreme Court. The defendant's motion was denied. The trial court then stated: "I believe today was the day the defendant is to surrender." Defendant's attorney

replied: "That's what we are here for, and I'm making the motion." The defendant's attorney then stated: "Could he have a few days to arrange his affairs?" The court responded to the effect that defendant knew he was to be in court on this date and that he should have had his affairs in order. The trial court remarked that the matter had been pending for some period of time and that defendant had known for some period of time that he was due in court on this date. The court concluded with the statement: "The defendant is remanded. Bail is exonerated." The reporter's transcript indicates that, following the quoted statement of the trial judge, the proceedings in the Marron case were concluded and that nothing further with respect to oral proceedings appears of record on September 17, 1975.

However, the minute order with respect to the proceedings in Marron's case on September 17, 1975, contains an entry that defendant's motion for a stay of execution to permit a filing of a petition for a writ of certiorari in the United States Supreme Court was denied. This minute order also contains an entry to the effect that defendant's request for a stay of execution of judgment was granted to September 29, 1975, at 9 a.m., with the additional entry: "Bl on appeal." It is obvious that the abbreviated latter entry means that there is outstanding bail on appeal.

On September 29, 1975, a minute order of the same department 129 regarding the Marron case sets forth that defendant was to surrender to commence time in custody, that no appearance was made by defendant or his counsel or a deputy district attorney. The minute order further provides that "[s]tay of execution of sentence having been heretofore granted" and "[d]efendant fails to appear without sufficient excuse," the appeal bail is forfeited and a bench warrant ordered issued.

Thereafter, Wilshire made a motion to vacate the court's order of bail forfeiture and for an order to exonerate the bond. Wilshire's motion was heard on March 24, 1976, in Department 132 of the Los Angeles Superior Court before a different trial judge than the one who sat in department 129 and sentenced defendant Marron and before whom the proceedings of September 17, 1975, were held. Wilshire's motion was denied and the court affirmed the prior order of bond forfeiture, dated September 29, 1975.

On this appeal, Wilshire makes essentially one contention, namely, that all conditions of its appeal bail bond were fully performed as of

September 17, 1975, when defendant Marron appeared in the trial court for execution of the judgment and sentence and that the trial judge's oral statement at the conclusion of the reported court proceedings that "[t]he defendant is remanded. Bail is exonerated," constituted an exoneration of the bail. It is Wilshire's position that the subsequent minute order entry, made on September 17, 1975, to the effect that defendant Marron was being granted a stay of execution of the judgment until September 29, 1975, was beyond the jurisdiction of the court insofar as it sought to order the bail bond on appeal to remain in effect. Wilshire's position, therefore, is that the trial court's proceedings on September 29, 1975, in which the minute order reflects the appeal bail bond forfeiture for defendant Marron's failure to appear that date, without sufficient excuse, to surrender to commence his time in custody, were void for lack of jurisdiction on the part of the court.

The People oppose Wilshire's position by asserting that the effective order of the trial court on September 17, 1975, was the minute order of the court which purported to grant defendant's motion for a stay of execution until September 29, 1975, and required the appeal bond of Wilshire to remain in effect, with Wilshire's obligation to produce defendant for surrender on September 29, 1975. Under the People's theory, the failure of defendant Marron to appear for surrender to start serving his sentence on September 29, 1975, entitled the court to order a forfeiture of the appeal bail bond issued by Wilshire, and that the subsequent order of refusal of the trial court to vacate the forfeiture and exonerate the bond as requested in Wilshire's motion was a valid order.

Both the People and Wilshire indicate that no decisional-law authority has been discovered which is authoritative and controlling with respect to the issue presented in the case at bench. It is the People's contention that the trial judge's oral pronouncement on September 17, 1975, remanding defendant to custody and exonerating the bond, is without force or effect in view of the fact that a subsequent minute order was made and entered the same day granting a stay of execution of the judgment and sentence until September 29, 1975. It is the contention of the People that the minute order of September 17, 1975, should be interpreted as reflecting a change of mind on the part of the trial judge at the same judicial session, or as reflecting a correction of a slip of the tongue by the trial judge, and that the trial judge had a right, at the same judicial session, to vacate its oral pronouncement of exoneration of bail and continue Wilshire's appeal bond in effect until the new appearance

date of September 29, 1975, for defendant Marron's surrender and the beginning of serving the sentence imposed.

The People claim that the variation between the trial judge's oral pronouncement of exoneration of the bond on September 17, 1975, and the subsequent minute order of the same day continuing the bond in effect is validly explainable under the principle announced by the California Supreme Court in *De la Beckwith* v. *Superior Court* (1905) 146 Cal. 496, 499 [80 P. 717], as follows: "It is a most common occurrence for a trial court to change its rulings during the progress of a trial, upon questions of law, and no one would contend that it is not within its power to do so, or that it should not do so when satisfied that the former ruling was erroneous." Thus, the People take the position that the record establishes that the trial judge, after initially denying defendant's motion for a stay of execution of the judgment and sentence, changed her mind and, later the same day, granted the defendant's motion and ordered a stay of execution of the judgment and sentence from September 17, 1975, to September 29, 1975.

The People argue that there is no rule of law that precludes a trial court from vacating a prior ruling and making a different ruling on the same day. The People point out that this procedure is exemplified by the case of *People* v. *Thomas* (1959) 52 Cal.2d 521 [342 P.2d 889]. In *Thomas*, in a morning session of the trial court, the judge denied probation and sentenced defendant to six months in jail after defendant had been found guilty of the offense of possession of heroin. In orally pronouncing this jail sentence, the judge did not mention the allegation in the information of a previous conviction of a felony the determination of which had been reserved for the date of sentence. Before the close of the day, however, defendant was brought back into court with his counsel and the court remarked that it had overlooked the fact that defendant had suffered a prior narcotics conviction. At this afternoon session the defendant admitted that he had suffered the prior conviction. The court then announced that the sentence pronounced in the morning was rescinded and that the defendant was sentenced to prison with the finding that the alleged prior narcotics conviction was true. The judgment reciting this finding and imposing the prison sentence was entered into the minutes for that day's proceedings.

In *Thomas*, the defendant sought to vacate the judgment pronounced in the afternoon and reinstate the judgment pronounced in the morning

session. The *Thomas* court held that a sentencing court does not exhaust its jurisdiction by announcing judgment, that is, by simply *speaking,* no matter how inadvertently or erroneously, and that a trial judge is not precluded from making a timely correction of either a slip of the tongue or an announcement of sentence which is based on a mistake of fact or law which has not become of record in the minutes and which has *not* affected the defendant. The *Thomas* case recognizes that, as a matter of actual trial court procedure, the minutes for the day's proceedings are not made up until the end of the day.

The case of *People* v. *McAllister* (1940) 15 Cal.2d 519 [102 P.2d 1072], is similar to *Thomas* in that it deals with the jurisdiction of the trial court to modify a sentence during the same judicial day. But in *McAllister,* as in *Thomas,* the defendant and his counsel were called back into court at a later session on the same day and the original oral pronouncement of sentence was modified with a new oral pronouncement of sentence. The minutes for that day's court session were made up at the close of the day and expressed the new or modified sentence only. The *McAllister* court points out that "when the two acts of the court occurred on the same day, no duty was imposed upon its clerk to enter the first sentence of the court before adjournment of the court for that day." (*McAllister, supra,* 15 Cal.2d 519, at p. 527.)

There can be little quarrel with the principle announced in *Thomas* and *McAllister* when the record supports application of that principle. But is the record in the case at bench at all analogous to that found in *Thomas* and *McAllister*? The record before us does not support the People's position that the minute order of September 17, 1975, represents a correction of the trial judge's oral pronouncement as a slip of the tongue, or a change of mind by the trial judge. How the minute order of September 17, 1975, happens to vary from the oral pronouncement made by the trial judge at the close of the oral proceedings is a matter of pure speculation. There is not an iota of evidence in the record before us that would explain, other than by sheer speculation, the entry of the minute order which continued the appeal bail bond in effect after defendant Marron had surrendered himself as required on September 17, 1975. The reporter's transcript of the proceedings at the hearing on Wilshire's motion to vacate the order of forfeiture of bail establishes the *speculation* upon which the People rely.

At the hearing on the motion to vacate the bail forfeiture order, conducted on March 24, 1976, the deputy district attorney advised the

trial judge that his version of what happened on September 17, 1975, was that, following the trial judge's oral pronouncement that defendant was remanded and his bail exonerated, defendant's counsel, at some time subsequently that day, renewed his motion for a continuance to September 29, 1975, and that the renewed motion was granted. The deputy district attorney *surmised* that the trial judge made the first ruling of denial on the record and that the renewed motion of defendant for a stay of execution of the judgment, was made off the record, but was granted; that this subsequent ruling, made off the record, constituted a reconsideration of the initial ruling made on the record.

The trial court, at the March 24, 1976, hearing, adopted the speculation set forth by the deputy district attorney by making its own speculation. Thus, the trial judge speculated on what he believed probably occurred on September 17, 1976, by stating the following: "THE COURT: The judge apparently changed her mind before the clerk entered the minute order. Now you have got the interesting proposition which is going to govern. [¶] I think probably what has occurred here is the thing that has happened in my courtroom, at least it does at times, and that is the judge has said, 'All right, you have had your appeal. You are present in the courtroom. You are remanded to custody. The bond is exonerated.' [¶] Then the *attorney goes into chambers* and says, 'Well, Your Honor,' as indicated partially here, 'the man has a family. He has got a couple of children. Why don't you give him two more days to put his family affairs in order,' and the judge says, 'Okay, I'll tell the clerk to release him. He has got two more days to put his affairs in order,' and the clerk enters this type of a minute order and the judge understands or has indicated to the clerk—and unfortunately it isn't on the record—that all of the proceedings are set aside in substance. [¶] Now, when you have that sort of a situation, which is going to govern, the clerk's minute order or the original transcript that was made? It is just an insufficient record." (Italics added.)

The record of the proceedings on Wilshire's motion to vacate the order of bail forfeiture, made on September 29, 1975, contains no testimony from the trial judge who conducted the proceedings on September 17, 1975, nor is there any testimony from the deputy district attorney, who was present in court on that latter date, nor from counsel for the defendant who was present on that date, with respect to any proceedings taking place in chambers or elsewhere following the proceedings in open court. The only testimony presented at the hearing on Wilshire's motion

to vacate the order of bail forfeiture that was made on September 29, 1975, was that of Manuel Diaz, who was the agent of Wilshire. Diaz testified that on September 18, 1975, defendant Marron came into his office and said that on the preceding day the judge had remanded him to custody and exonerated the bond; that a deputy sheriff then took him into custody and placed him in the lockup; that some time thereafter the deputy sheriff came into the lockup and told him that he could go. Diaz testified that he asked Marron what the deputy sheriff said as to why Marron was being released, and that Marron simply told him that his bond was exonerated. On cross-examination, Diaz testified that Marron also told him that the deputy sheriff advised Marron that he was to return to court within two weeks but did not tell him for what reason he was to return in two weeks.

It is thus established beyond all doubt that the situation presented in *Thomas* is not at all comparable to that presented in the case at bench. In *Thomas,* the court's action in the afternoon of vacating the sentence pronounced in the morning was accomplished in open court with defendant and his counsel present, all of which is reflected in the reporter's transcript. There is no speculation in *Thomas* with respect to the minutes of the court being at variance with the court's pronouncement of the jail sentence at the morning session. In *Thomas,* the *reporter's transcript* establishes that the trial court recognized its failure to make a finding on the issue left open regarding defendant's commission of the prior felony which was charged in the information. On the contrary, in the case at bench, the People's claim that the trial judge either made a slip of the tongue in pronouncing an exoneration of bail, or changed her mind after a conference in chambers, is rank speculation and not supported by a transcript of the record such as occurred in the *Thomas* case.

In the case at bench, as distinguished from *Thomas,* the court session had concluded as revealed by the reporter's transcript. Whether the trial judge privately instructed the clerk to insert in the minutes for the day in question the stay of execution and continuance of the appeal bond, or whether the clerk made those entries on his own initiative, we do not know. No case has been cited to us which indicates that after a court session has closed, the court privately may change its mind and direct the clerk to enter minutes contrary to the rulings made on the record, or that the clerk of the court has any jurisdiction to make such changes without direction. The *Thomas* holding is succinctly set forth as follows: "Thus

on the morning of April 7 the pronouncement of sentence was not the only function remaining for the court to perform. Before judgment could properly be pronounced an issue was to be determined. But when he pronounced the jail sentence, the judge inadvertently left open that issue, which had been raised by the information and which had previously been expressly held open for disposition at this time. We conclude that in the circumstances of this case the trial judge did not err when he recalled the defendant, vacated the county jail sentence, completed the determination of issues, and pronounced the new sentence on the afternoon of April 7." (*Thomas, supra,* 52 Cal.2d 521, at p. 536.)

Considering the state of the record before us, we are called upon to determine whether the oral pronouncement of the trial court that bail was exonerated became effective to preclude any further obligation of Wilshire on its appeal bond, or whether the subsequent minute order of the same date continuing the bond in effect, superseded the court's oral pronouncement.

In asserting that the court's oral pronouncement as revealed in the reporter's transcript prevails over a subsequent minute order of the same day, Wilshire relies on the principle set forth in *Estate of Caldwell* (1932) 216 Cal. 694 [16 P.2d 139]. Here the question was whether a motion for a directed verdict had been made prior to the making of a motion for judgment notwithstanding the verdict—the former being a statutory prerequisite to the latter motion. The judgment recited that a motion for a directed verdict had been made and denied, but the reporter's transcript revealed nothing about such a motion being made. The *Caldwell* court stated: " 'While a recital in a judgment is conclusive as to the actions of the trial court where there is no bill of exceptions or reporter's transcript or other portion of the record showing the facts, this is not the rule where the record on appeal, as here, includes the reporter's transcript, duly certified as comprising a full, true and correct transcript of "all rulings, instructions, acts and statements of the court," and such transcript shows neither the making nor the denial of a motion for a directed verdict, evidence quite conclusive that no such motion was ever made or ruled upon by the trial judge. Where the record shows, as it does here, that an essential prerequisite to the entry of a judgment notwithstanding the verdict did not exist, the record must prevail over the recital in the judgment where such judgment is attacked upon the ground that the prerequisite had no existence and that the recital in the judgment is not sustained by the record. [Citations.]' " (*Caldwell, supra,* 216 Cal. 694, at p. 696.)

*Caldwell* is certainly more like the situation presented in the case at bench than is *Thomas* or *McAllister,* for in *Caldwell,* the reporter's transcript did *not* reveal a ruling of the trial court set forth in the judgment, while in *Thomas* and *McAllister* the reporter's transcript *did* reveal the changed ruling that was set forth in the minute order.

It is clear that the question of whether an entry in a trial court's minutes takes precedence over the oral pronouncements of the trial court is not the same in all situations. Under some circumstances the oral pronouncement takes precedence while in other circumstances the entry in the court's minute order takes precedence. It is an accepted practice in trial court proceedings that a trial court's minutes are generally not completed during the course of oral proceedings. The completion takes place following the adjournment taken by the court at the close of the day.

One situation in which a rule of precedence has developed when oral pronouncements of the court vary from the entry in the court's minutes occurs with respect to the pronouncement of judgment and sentence in felony cases. ■ After conviction of a felony and where probation is denied, the court must pronounce judgment upon defendant by imposing a fine or a sentence of imprisonment. Such pronouncement must generally be made in open court with the defendant being present. (See Pen. Code, §§ 1191, 1193, 1202.) The rendition of judgment is an oral pronouncement. "Judgment must be pronounced *orally* in the presence of the defendant, and it must reflect the court's determination of the matter before it." (*People* v. *Hartsell* (1973) 34 Cal.App.3d 8, 13 [109 Cal.Rptr. 627].) (Italics added.)

Since the pronouncement of judgment and sentence must be done orally by the court in defendant's presence, the question arises with respect to the legal effect of the oral pronouncement of judgment and sentence as contrasted with a different subsequent entry in the minutes of the court. ■ "The pronouncing of sentence is a judicial act" (*In re Larsen* (1955) 44 Cal.2d 642, 647 [283 P.2d 1043]), while "[e]ntry of the judgment in the minutes records the action of the court in the premises;" and "is a ministerial act." (*People* v. *Blackman* (1963) 223 Cal.App.2d 303, 307 [35 Cal.Rptr. 761].) What is the legal result if the entry in the court's minutes differs from the oral pronouncement made by the trial judge? ■ "If the judgment entered in the minutes fails to reflect the judgment *pronounced* by the court, the error is clerical, and the record

can be corrected at any time to make it reflect the true facts. [Citations.]" (*Hartsell, supra,* 34 Cal.App.3d 8, at p. 13.) (Italics added.)

There is a clear distinction, however, between judicial error and clerical error with respect to the divergence between the oral pronouncement of judgment and sentence and the entry made in the court's minutes. "Clerical error, however, is to be distinguished from judicial error which cannot be corrected by amendment. The distinction between clerical error and judicial error is 'whether the error was made in *rendering* the judgment, or in *recording* the judgment rendered.'" (*In re Candelario* (1970) 3 Cal.3d 702, 705 [91 Cal.Rptr. 497, 477 P.2d 729].) (Italics added.)

The law is well established that the circumstances under which judicial error in the pronouncement of judgment and sentence may be corrected are severely circumscribed. "Judicial error in the pronouncement of judgment, however, can only be corrected in two circumstances: (1) where the judgment as pronounced is not merely erroneous but void for lack of jurisdiction [citations]; and (2) where the modification of the judgment as pronounced is made before the judgment is entered in the minutes and before the defendant is placed under the restraint of his sentence [citations]." (*Hartsell, supra,* 34 Cal.App.3d 8, at p. 13.) *Hartsell* cites for the rule of law as to the second circumstance in which judicial error in the oral pronouncement of judgment may be corrected the cases of *Thomas* and *McAllister,* discussed *ante.*

In deciding the question before us, it is important that we bear in mind the object of releasing a defendant on bail and the statutory requirements relative to bail bonds. ■ It was pointed out in *People* v. *Calvert* (1954) 129 Cal.App.2d 693, 698 [277 P.2d 834], that "[t]he object of bail is to insure the attendance of the principal and his obedience to the orders and judgment of the court. *There should be no suggestion of revenue to the state or county, nor punishment to the surety.*" (Italics added.)

The nature and conditions of the undertaking required on an appeal bond is set forth in Penal Code section 1273. It provides, in relevant part that, after conviction, and upon an appeal, the condition of bail is that "[i]f judgment of imprisonment has been given, that he [defendant] will surrender himself in execution of the judgment, upon its being affirmed or modified, . . ." The bond of Wilshire in the case at bench was in the language of the requirements set forth in Penal Code section 1273.

Two sections of the Penal Code are relevant to the question of exoneration of the bail upon performance by the surety of the obligations under the bail bond. Section 1195 provides, in relevant part, that "[i]f the defendant, who is on bail, does appear for judgment and judgment is pronounced upon him or probation is granted to him, then the bail shall be exonerated . . . ." Section 1300 makes provision for the surety to surrender the defendant before the latter is otherwise required to be surrendered and for the court to order that the bail be exonerated under such circumstances.

Neither section 1300 nor section 1195 of the Penal Code provides that the order for exoneration of bail shall be set forth in the court's minutes to become an effective order. There is no provision of either section which precludes an oral pronouncement by the court from being effective in exonerating bail.

Penal Code sections 1300 and 1195 are to be contrasted with the provisions of Penal Code section 1305 that deal with the matter of forfeiture of the undertaking of bail. In substance, subdivision (a) of section 1305 of the Penal Code provides that if, without sufficient excuse, a defendant fails to appear in court when his presence is lawfully required, "the court must direct the fact to be entered upon its *minutes*" (italics added), and the undertaking must thereupon be declared forfeited.

The People argue, however, that the contents of the court's *minutes* should be the controlling factor as to both *exoneration* of bail and *forfeiture* of bail. The cases relied upon by the People deal primarily with questions involving bail forfeiture and not with the issue of when an order of exoneration of bail becomes effective. Thus, the People rely upon *People* v. *Surety Ins. Co.* (1973) 34 Cal.App.3d 444 [109 Cal.Rptr. 894] as indicating that there is no unfairness to a bonding company by requiring reliance upon the court's minutes as the controlling order. The *Surety Ins. Co.* case held that if a trial court's minutes on a certain date did *not* reflect a nonexcused nonappearance by a defendant and a bail forfeiture as a result, an order of bail forfeiture made on a subsequent date is foreclosed. The rationale of fairness here is that if a court's minutes do *not* reflect an order of bail forfeiture, the bonding company may be lulled into a false sense of security and not make early efforts to locate the defaulting defendant in order to secure a release from the bail forfeiture.

The rationale of the *Surety Ins. Co.* case is also exemplified in *People v. United Bonding Ins. Co.* (1971) 5 Cal.3d 898 [98 Cal.Rptr. 57, 489 P.2d 1385]. In *United Bonding,* a defendant out on bail failed to appear on the date set for trial and the trial judge issued a bench warrant, but neither the minutes of the court, nor any oral pronouncement of the judge reflected any bail forfeiture for failure of the defendant to appear. Three months later when defendant still had not appeared, the trial judge ordered a bail forfeiture. United Bonding, the surety for defendant, made a motion to vacate the bail forfeiture and to exonerate the bail bond. The Supreme Court held that the provisions of Penal Code section 1305 were jurisdictional, and that the failure of the trial court to comply therewith and order a bail forfeiture on the date defendant failed to appear "without sufficient excuse" precluded any subsequent order of bail forfeiture. In so holding, the court stated: "There are sound reasons, however, implicit in the pertinent statutory provisions for holding that a forfeiture of a bail bond, where required, must be timely declared. *The law traditionally disfavors forfeitures and statutes imposing them are to be strictly construed.* [Citation.]" (*United Bonding, supra,* 5 Cal.3d 898, at p. 906.) (Italics added.)

The principles enunciated in the *Surety Ins. Co.* and *United Bonding* cases are simply not applicable to the situation presented in the case at bench. The views expressed in *Surety Ins. Co.* and *United Bonding* point up the difference in language used in the Penal Code sections relating to bail forfeiture and that used in the Penal Code sections relating to the exoneration of bail. The public policy *disfavoring* forfeitures which result in a strict construction of the Penal Code sections which require that orders of bail forfeiture be inserted in the court's minutes finds no counterpart in a consideration of the Penal Code sections relating to bail exoneration which contain no mandatory requirement that orders of bail exoneration be inserted in the court's minutes.

■ We hold, therefore, that, under appropriate circumstances, a court's oral pronouncement of an order exonerating bail is a valid order even though such an order is not recorded in the minutes of the court.

■ The key issue presented is whether the surety's obligations have been performed to entitle it to an order exonerating bail. It is clear that there is no liability on the part of a surety under its bail bond if the defendant's nonappearance at court is not one covered by the bond's provisions. "Where there is a breach of the obligation, the bail should be

enforced. When the nonappearance is not one which the bail was required to or did cover, it would penalize the surety unwarrantedly to permit recovery on the undertaking." (*People* v. *North Beach Bonding Co.* (1974) 36 Cal.App.3d 663, 675 [111 Cal.Rptr. 757].)

In the *North Beach* case, the defendant appeared in court on March 21, 1972, and a prison sentence was imposed. But he was granted a stay of execution to March 24, 1972, at which time he was to surrender to the sheriff and bail was ordered to be exonerated upon his surrender. Defendant failed to appear on March 24, 1972. However, the trial court waited until March 27, 1972, to sign an order forfeiting bail. The surety for defendant subsequently made a motion to vacate the forfeiture. The trial court denied the motion. In reversing the trial court's action, the *North Beach* court stated: "In this case all of the conditions of the bond were performed and the court could *not* extend them by granting a stay of execution. . . . When custody is delayed by order of court beyond the reach of the conditions of the bond, . . . the surety is not liable for non-appearance and the undertaking must be exonerated." (*North Beach, supra,* 36 Cal.App.3d 663, at p. 675.) (Italics added.)

The People contend that in the case at bench Wilshire's obligations under its bond were never performed because defendant Marron was never surrendered into custody. The custody requirement for an exoneration of bail is expressed in *People* v. *Scott* (1960) 184 Cal.App.2d 792, 794 [7 Cal.Rptr. 755] as follows: "It is significant, also, that the code provision for exoneration of bail by surrender of the defendant requires that the officer to whom the surrender is made 'must detain the defendant in his custody' (Pen. Code, § 1300, subd. 1). While no great formality is required to constitute a taking into custody by the sheriff [citation], there must be some submission to custody or control to exonerate the bail [citation]."

■ In the case at bench, however, the factual situation is similar to and governed by the principles set forth in *North Beach*. On September 17, 1975, Wilshire's appeal bond obligations as required by Penal Code section 1195 had been fully performed. Defendant Marron appeared for execution of the judgment and sentence, surrendered, and was taken into custody by the sheriff, and the trial court ordered exoneration of the bail accordingly. Defendant Marron's nonappearance on the continued date of September 29, 1975, was not one covered by the obligations of the Wilshire bond. On the continued date of September 29, 1975, the

provisions of Penal Code section 1305 could have no application since there was no obligation on the part of Wilshire to insure Marron's appearance on that date—Wilshire's bond obligation having been fully performed on September 17, 1975, upon Marron's appearance and surrender for execution of the judgment and sentence and his having been taken into custody by the sheriff. The trial court's unilateral action on September 17, 1975, in releasing defendant Marron from custody of the sheriff after Marron's surrender and submission to custody of the sheriff cannot enlarge the obligations of Wilshire, the surety.

The judgment (order) appealed from is reversed.

Kingsley, Acting P. J., concurred.

**DUNN, J.,** Concurring and Dissenting.

I concur in the reversal.

I do not, however, concur in the majority's reasoning. It seems to me the minute orders are self-conflicting and, since this conflict may not be resolved by reference to the reporter's transcript, the conflict must be resolved by the trial court.

Furthermore, I see no reason to publish this opinion since it does not meet the standards of rule 976, subdivision (b), California Rules of Court.