[Crim. No. 17402. First Dist., Div. One. Mar. 5, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
MORRIS HOWARD GARDNER et al., Defendants and Appellants.

## COUNSEL

Jonathan Matthew Purver and Quin Denvir, State Public Defender, under appointments by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, B. E. Bergesen III, Deputy State Public Defender and Maude H. Pervere, Acting Deputy State Public Defender for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Derald E. Granberg and Laurence M. May, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

RACANELLI, P. J.—On an information charging defendants with five separate counts of grand theft (Pen. Code, § 487a: felonious theft of the carcass of a hog), three counts of criminal trespass (Pen. Code, § 602, subd. (m)) and one count of auto theft (Veh. Code, § 10851), the jury returned a verdict finding defendant Gardner guilty of all but one of the grand theft charges[1] and both defendants guilty of the trespass charges and misdemeanor "joyriding" (Pen. Code, § 499b), a lesser included offense of auto theft.[2] Defendant Gardner received concurrent state prison sentences on the felony convictions; maximum sentences were imposed on both defendants' misdemeanor convictions, execution stayed as to defendant Gardner only.

On appeal, defendant Gardner challenges the validity of the multiple felony prosecutions and convictions while defendant Johnson raises an issue of unlawful detention;[3] additionally, each defendant claims the sentence imposed violates the statutory prohibition against multiple punishment. (See Pen. Code, § 654.) For the reasons which follow, we conclude that the judgments of multiple felony convictions and multiple punishment were erroneous; accordingly, we reverse the judgment as to defendant Gardner and remand with directions, and modify the judgment as to defendant Johnson, and, as so modified, affirm.

We recite the facts relevant to our discussion.

On November 13, 1976, defendant Gardner, accompanied by his 10-year-old son and codefendant Johnson, was hunting wild hogs upon unfenced, open land near an Indian reservation where he had previously hunted with permission. Upon sighting several grazing hogs, he fired rapidly and killed five of them during the single volley. The shots were heard by a neighbor of Andrew Scheubeck upon whose property the killings had occurred. A later search disclosed remnants of the carcasses which, through a system of earmarkings, were identified as domestic hogs

---

[1]Defendant Johnson was likewise acquitted of one felony offense, the jury unable to reach a verdict on the remaining four counts.

[2]Parenthetically, we note that the information, as amended, contained a felonious "take or drive" allegation which would appear to preclude a "joyriding" conviction as a lesser included offense. (See *People* v. *Thomas* (1962) 58 Cal.2d 121 [23 Cal.Rptr. 161, 373 P.2d 97] [app. dism., 371 U.S. 231 (9 L.Ed.2d 495, 83 S.Ct. 327)].) However, since neither defendant challenges that conviction, we do not reach the question of its validity.

[3]See footnote 6, *post*.

belonging to Scheubeck. Access to the property had been gained apparently by forcing a fence gate on the private property. That evening, acting upon Scheubeck's report of a possible burglary, sheriff's deputies stopped and separately detained three vehicles; defendants were among the occupants in two of the vehicles. Discovery of portions of hog carcasses in the vehicles resulted in the defendants' arrest. At trial, defendant Gardner admitted the shootings stating his belief they were wild rather than domestic hogs.[4]

## I

### *Multiple Prosecution and Conviction*

Defendant Gardner now claims, as he did before trial and sentencing, that the series of thefts of carcasses occurring during a single transaction constituted but one offense subject to prosecution and conviction. The claim is valid.

The common law crime of larceny, codified over 100 years ago (see Pen. Code, § 484 et seq.), requires both an asportation or carrying away as well as the specific intent to steal. (See 1 Witkin, Cal. Crimes, §§ 378 and 383, pp. 351 and 357.) Though amended on a number of occasions (see legislative history following Pen. Code, § 484, Deering's Cal. Codes Ann.), the various penal sections defining grand theft of property have consistently required the essential element of a felonious taking. (See Pen. Code, § 487 and related legislative history, *op. cit.*) The 1943 amendment proscribing the theft of any bovine carcass was itself amended 10 years later to broaden the categories of theft of livestock carcasses, or any portion thereof. (Pen. Code, § 487a, subds. (a), (b); Stats. 1943, ch. 904, § 1, p. 2753; Stats. 1953, ch. 1547, § 1, p. 3215.)[5]

We note that while section 487a distinguishes the felonious taking of a carcass belonging to another (subd. (a)) from that of a *portion* of the animal killed *without the owner's consent* (subd. (b)), the information herein generally charges a violation of section 487a alleging felonious

---

[4]An official of the California Department of Fish and Game testified that the statewide year-round season on wild hogs permitted a hunter to take one per day.

[5]Section 487a provides in pertinent part: "(a) Every person who shall feloniously steal, take, transport or carry the carcass of any bovine, caprine, equine, ovine or suine animal . . . , which is the personal property of another, . . . , is guilty of grand theft. (b) Every person who shall feloniously steal, take, transport, or carry any portion of the carcass of any bovine, caprine, equine, ovine, or suine animal . . . , which has been killed without the consent of the owner thereof, is guilty of grand theft."

asportation of "the carcass or any portion . . . which is the personal property of another," thus incompletely overlapping both subsections. Yet, the evidence is undisputed that only portions of the several carcasses were actually taken, carcass being generally defined as "a dead body of . . . an animal." (See Webster's Third New Internat. Dict., p. 337.) We conclude, as apparently did the parties, that the substantive crime charged and tried was that described by subdivision (a). ▮ Thus, our inquiry focuses on whether the criminal taking of more than one carcass from the same owner at the same time and under similar circumstances constitutes but one single act of theft or several distinct offenses solely by reason of the number of carcasses taken. We think there is but one act of theft.

The rule early developed that where an overall plan or single intent was formed to commit larceny of certain property, whether belonging to the same or different owners, the crime constituted but a single offense of theft. (See 1 Witkin, Cal. Crimes, §§ 374, 375, pp. 348, 349.) ▮ "Whether a series of wrongful acts constitutes a single offense or multiple offenses depends upon the facts of each case, and a defendant may be properly convicted upon separate counts charging grand theft from the same person if the evidence shows that the offenses are separate and distinct and were not committed pursuant to one intention, one general impulse, and one plan." (*People* v. *Bailey* (1961) 55 Cal.2d 514, 519 [11 Cal.Rptr. 543, 360 P.2d 39].)

While the cases fail to adequately distinguish between the concept of a single act or omission in the context of multiple prosecution and conviction as opposed to multiple punishment (see 2 Witkin, Cal. Crimes, §§ 948-953, pp. 900-907, *passim*; cf. *People* v. *James* (1977) 19 Cal.3d 99 [137 Cal.Rptr. 447, 561 P.2d 1135]; *People* v. *Bauer* (1969) 1 Cal.3d 368 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398] [cert. den., 400 U.S. 927 (27 L.Ed.2d 187, 91 S.Ct. 190)]), nonetheless the principle distilled unerringly indicates that in the crime of larceny the simultaneous theft of several items of property, even from multiple owners, constitutes but a single offense. (*People* v. *Bauer, supra,* at p. 378.) Thus, it has been held that, for purposes of sentence, a defendant who receives more than one item of stolen property on a single occasion has committed but one offense of receiving stolen property. (See *People* v. *Lyons* (1958) 50 Cal.2d 245, 275 [324 P.2d 556].) ▮ Although the statutory proscription against multiple prosecution is inapplicable where but a single *prosecution* or action is involved (Pen. Code, § 654; *People* v. *Seiterle* (1963) 59 Cal.2d 703, 712 [31 Cal.Rptr. 67, 381 P.2d 947]), the defendant may not be

subjected to multiple *convictions* based upon a single, indivisible act or omission in violation of a single statute. (See *People* v. *Lewis* (1978) 77 Cal.App.3d 455, 461 [143 Cal.Rptr. 587], and illustrations there given.) ██ Herein, in carrying out the single purpose and objective of wrongfully removing the hogs slain during the brief hunting episode, the defendant executed but one contemporaneous general plan and intention, the felonious act of taking carcasses constituting the gravamen of the crime as an integral part of the "whole plan." (See *People* v. *Neder* (1971) 16 Cal.App.3d 846, 852 [94 Cal.Rptr. 364].)

A review of the relatively few decisions dealing with the theft of livestock generally supports our conclusion that in such circumstances the substantially simultaneous theft of more than one animal constitutes but a single offense of grand larceny or grand theft,[6] e.g., *People* v. *Warren* (1900) 130 Cal. 683 [63 P. 86] (one count of grand larceny in the theft of four calves); *People* v. *Cunningham* (1885) 66 Cal. 668 [4 P. 1144, 6 P. 700] (the taking and driving away of five head of cattle at the same time, place and circumstances, and with the same intent, constitutes a single transaction or act); *People* v. *Robles* (1868) 34 Cal. 591 (driving off a herd of sheep constitutes but one larcenous act); *People* v. *Littlefield* (1855) 5 Cal. 355 (one count of grand larceny in taking and driving away three head of cattle); *People* v. *Thomas* (1974) 43 Cal.App.3d 862 [118 Cal.Rptr. 226] (theft of two calves charged in single violation of Pen. Code, § 487, subd. 3). We see no meaningful distinction in the taking of the carcass in contrast to the live animal. Nor does the obvious fact that several independent physical acts of effecting removal of the carcasses militate against the conclusion to be reasonably drawn that such a unitary transaction involving a single felonious intent constituted but one continuous larcenous act subject to prosecution and conviction. (See *People* v. *Dillon* (1934) 1 Cal.App.2d 224, 229 [36 P.2d 416].)

For the foregoing reasons, the judgment of conviction as to defendant Gardner on three of the four felony counts must be reversed.

In light of our decision that multiple convictions are prohibited, the merits of defendant's multiple punishment claim, though conceded by the People (see *People* v. *Miller* (1977) 18 Cal.3d 873, 885 [135 Cal.Rptr.

---

[6]Indeed, the record arguably supports a similar conclusion originally reached by the prosecutor and trial court when, in granting the People's pretrial motion to amend the information to include two carcasses in count V (on the apparent theory that there were more carcasses than there were counts), the trial judge correctly observed that the district attorney could "put more than one hog in a count, there's no doubt about that."

654, 558 P.2d 552]) becomes moot. *(People v. Harris* (1977) 71 Cal.App.3d 959, 969 [139 Cal.Rptr. 778].)

## II

### *Unlawful Detention*

■ Both defendants contend that the stop and detention of the vehicle in which they were occupants, was illegal thus tainting the evidence seized during the ensuing search which should have been suppressed.[7] We disagree.

Relying on familiar principles governing detention as recently restated and clarified by our highest court, defendants now argue that Deputy Forguson neither subjectively entertained a suspicion that the occupants of the two vehicles were involved in a crime nor was it objectively reasonable for him to do so. (See *In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957].) The circumstances reflected in the record persuasively refute the argument.

■ In reviewing a disputed Fourth Amendment claim, the trial court as the exclusive factfinder in a suppression hearing *(People v. West* (1970) 3 Cal.3d 595, 602 [91 Cal.Rptr. 385, 477 P.2d 409]; *People v. Heard* (1968) 266 Cal.App.2d 747, 749 [72 Cal.Rptr. 374]), is vested with the power to "judge the credibility of the witnesses, *resolve any conflicts in the testimony, weigh the evidence and draw factual inferences,* . . . [and] On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence." (Italics added; *People v. Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621]; accord: *People v. Superior Court (Keithley)* (1975) 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585]; *People v. Gale* (1973) 9 Cal.3d 788, 792 [108 Cal.Rptr. 852, 511 P.2d 1204].)

■ The evidence discloses that Officer Forguson, having received a reliable citizen's report late that evening of a possible burglary and trespass at the Scheubeck property, together with information that the suspect vehicles were headed south on a little traveled rural road at a high

---

[7]We note that defendant Gardner in a supplemental motion filed well after briefing seeks to raise the same issue by adopting defendant Johnson's argument without discussion. While the purported motion in substance constitutes an untimely request for leave to file a supplemental brief, we elect to disregard such defect and consider such brief as though timely filed. (See Cal. Rules of Court, rule 18(3).)

rate of speed, soon observed three unfamiliar vehicles traveling south-bound on the described road in convoy fashion. Such evidence clearly afforded a reasonable justification for the temporary detention (cf. *People v. Mejia* (1969) 272 Cal.App.2d 486, 489-490 [77 Cal.Rptr. 344]) and adequately supports the implied factual determination that the officer under such circumstances reasonably entertained a subjective belief that a crime of either trespass or burglary had been committed by the vehicles' occupants justifying the initial stop and detention. The fact that the officer may have believed that only a misdemeanor had been committed is immaterial (see *People v. Henze* (1967) 253 Cal.App.2d 986, 990 [61 Cal.Rptr. 545]) since the underlying suspicion need only be reasonably founded upon "activity relating to [any] crime" (see *In re Tony C., supra,* 21 Cal.3d 888, 893-895). Certainly the rapid departure of the Toyota vehicle as well as the officer's prudent decision to allow the remaining vehicles to leave in view of the number of occupants and their possession of rifles, fortified the finding of reasonable cause to effect the second detention by fellow officers. The evidence observed during that detention and ultimately seized was properly admitted. We find no error as claimed.

## III

### *Multiple Misdemeanor Punishment*

Defendant Johnson argues that imposition of a concurrent sentence on the trespassing counts, together with the consecutive sentence imposed on the joyriding conviction, is proscribed under the provisions of Penal Code section 654. The People candidly concede such error. (See *People v. Miller, supra,* 18 Cal.3d 873, 885.) The proper corrective remedy is to stay execution on the remaining counts (counts VI, VIII and IX) pending completion of the sentence imposed under count VII, upon such completion the stay to become permanent. (See *In re Wright* (1967) 65 Cal.2d 650, 655-656 [56 Cal.Rptr. 110, 422 P.2d 998].)[8]

The judgment as to defendant Gardner is reversed as to counts II, III and IV with directions to the trial court to strike such convictions and

---

[8]Defendant Johnson correctly observes that the judgment orally pronounced on each of the trespass counts was 160 days in the county jail; however, the abstract of judgment contained in the clerk's transcript discloses a commitment period of 180 days each. Since the act of oral pronouncement of sentence is a judicial act, the conflicting entry in the clerk's minutes and abstract of judgment is ministerial in nature and correctible by clerical amendment. (See *People v. Wilshire Ins. Co.* (1977) 67 Cal.App.3d 521, 532-533 [136 Cal.Rptr. 693].)

dismiss same and to rearraign said defendant for resentencing on count I, the remaining valid felony conviction. (Cf. *People* v. *Harris, supra,* 71 Cal.App.3d 959, 971.) The judgment as to defendant Johnson is modified to stay execution of the sentences imposed on counts VI, VIII and IX pending completion of the sentence imposed on count VII, at which time the stay shall become permanent. As so modified, the judgment is affirmed.

Elkington, J., and Newsom, J., concurred.