Filed 2/28/13  P. v. Motley CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>    v.<br><br>ERNEST EUGENE MOTLEY,<br><br>      Defendant and Appellant. | C065447<br><br>(Super. Ct. No. 09F07241) |

Defendant Ernest Eugene Motley appeals following his conviction for first degree burglary (Pen. Code, § 459),[1] infliction of corporal injury on a co-parent (§ 273.5, subd. (a)), two counts of assault with a firearm (§ 245, subd. (a)(2)), assault with force likely to produce great bodily injury (§ 245, subd. (a)(1)), misdemeanor child abuse (§ 273a, subd. (b)), felon in possession of ammunition (former § 12316, subd. (b)(1)), and

_____

[1] Undesignated statutory references are to the Penal Code.

1

felon in possession of a firearm (former § 12021, subd. (a)(1)).[2]  Defendant contends that the trial court violated section 654's prohibition against multiple punishment in two respects, and that the abstract of judgment contains clerical errors.  The People dispute one of defendant's section 654 claims but otherwise agree with defendant.  We conclude section 654 requires stay of the sentence for possession of ammunition by a felon, and direct preparation of a modified abstract of judgment.  We also direct that the trial court correct several clerical errors in the abstract.  We otherwise affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Charges

By amended information, the prosecution charged defendant with 10 counts; the first two were committed on September 15, 2009, and the remainder were committed on September 22, 2009.  The section 654 issues presented here relate to Count Three, first degree burglary, which occurred on September 22, but there is evidentiary support for one of defendant's criminal objectives on that day in the events of September 15.

### September 15, 2009 Charges

**Count One** - corporal injury on a co-parent, Vanity Doe (§ 273.5, subd. (a)), and

**Count Two** - felony child abuse (§ 273a).

### September 22, 2009 Charges

**Count Three** - first degree burglary (residential) (§ 459);

**Count Four** - first degree robbery (residential) of keys, a helmet and a backpack from Calvin Lynn (§ 211);

---

[2]  Former sections 12316 and 12021 were part of a legislative reorganization and reenactment without substantive change, operative January 1, 2012.  (Stats. 2010, ch 711, §§ 4, 6.)  Former section 12316 is now section 30305, and former section 12021 is now section 29800.  (Stats. 2010, ch. 711, §§ 4, 6.)  In this opinion, we use the former numbering, which is used throughout the record and in the abstract of judgment.

**Count Five** - assault with a firearm on Calvin Lynn (§ 245, subd. (a)(2)), with an allegation of personal use of a firearm (§ 12022.5, subds. (a), (d));

**Count Six** - assault by means of force likely to produce great bodily injury on Calvin Lynn (§ 245, subd. (a)(1));

**Count Seven** - corporal injury of a co-parent, Vanity Doe (§ 273.5, subd. (a)), with allegations of personal infliction of great bodily injury under domestic violence circumstances (§ 12022.7, subd. (e)), and personal use of a firearm (§ 12022.5, subds. (a), (d));

**Count Eight** - assault with a firearm on Vanity Doe (§ 245, subd. (a)(2)), with an allegation of personal use of a firearm (§ 12022.5, subds. (a), (d));

**Count Nine** - felon in possession of ammunition (former § 12316, subd. (b)); and

**Count Ten** - felon in possession of a firearm (former § 12021, subd. (a)).

### The September 15, 2009 Incident

On the night of September 15, 2009, defendant went to visit his six-year-old daughter and pick up his mail. The child's mother, Vanity, no longer allowed defendant in her apartment, which was leased under her name. She gave defendant his mail and defendant visited with their daughter outside. Vanity indicated that their daughter needed to go to bed and the child came back inside. Defendant called for the child to come back outside. Around that time, Vanity received a telephone call from a male friend and she answered it within earshot of defendant. Defendant pushed his way into the apartment and went directly to their daughter's room. Vanity tried to stop him from entering the child's bedroom. Defendant grabbed Vanity by the neck and threw her into the closet. Defendant then "snatched" the child from the arms of a friend who was visiting Vanity, which caused the child to cry. Vanity was "grabbing at [defendant]" in an attempt to get the child back. As defendant was leaving the apartment with the child, he swung around, trying to keep Vanity away from her, and the child's head struck the front door. The

3

child sustained a knot and a cut on the back of her head. Defendant left with their daughter, but later had a friend return the child.

### The September 22, 2009 Incident

Early in the morning on September 22, 2009, Vanity and her boyfriend, Calvin Lynn, awoke to find defendant in Vanity's bedroom pointing a handgun at them. Defendant kicked Lynn in the face several times, grabbed Vanity by the neck and struck her in the face with the gun. She felt severe pain in her eye and felt blood coming down her face. Defendant pointed the gun at Lynn and told him to get on the floor. Lynn eventually knelt down. Defendant pulled back the slide on the gun, but was having problems with it. A live bullet fell out of the gun onto the floor. Defendant told Lynn, "I should kill your ass" and asked "where is your money at?" Lynn said he did not have any money. Defendant told Lynn to leave the apartment, and threatened that there would be "gunplay" if he (defendant) had to come back. Lynn left. Thereafter, defendant left the apartment, taking Lynn's backpack, cell phone, motorcycle helmet and keys.

Vanity was treated at the hospital for injuries to her eye and ear. The eye injury was severe, causing concern about permanent vision loss. A .40-caliber bullet was found on the bedroom floor. After the September 22 incident, Vanity realized the spare house keys she kept on her kitchen counter were missing.

Vanity testified about prior uncharged acts of domestic violence. Defendant choked her in 2003. He slapped her in the mouth and "busted [her] lip" in November or December 2008. He choked her in February 2009. In June 2009, he threw water on her, hit her in the back of the head with his hand, and kicked her. In August 2009, he punched her in the arm.

The parties stipulated that defendant was convicted of a felony offense in February 2003.

### The Verdicts

The jury returned verdicts as follows:

4

**Count One** - corporal injury on a co-parent:  the jury deadlocked, and the count was subsequently dismissed.

**Count Two** - felony child abuse:  the jury found defendant not guilty of felony child abuse, but guilty of the lesser included offense of misdemeanor child abuse.

**Count Four** - first degree robbery of Lynn:  the jury found defendant not guilty of both the charged offense and the lesser included offense of petty theft.

**All other counts and enhancements**:  the jury found defendant guilty as charged and found true the great bodily injury and firearm use enhancement allegations.

### The Sentencing

The trial court sentenced defendant to a total term of 15 years, calculated as follows:

**Count Seven** - corporal injury of a co-parent (selected by the trial court as the principal term):  midterm of three years, plus three years for the great bodily injury enhancement and four years for the firearm use enhancement;

**Count Three** - first degree burglary:  one year four months, to be served consecutively;

**Count Five** - assault with a firearm on Lynn:  one year, plus one year four months for the firearm enhancement, to be served consecutively;

**Count Six** - assault by means of force likely to produce great bodily injury on Lynn:  one year, stayed pursuant to section 654;

**Count Eight -** assault with a firearm on Vanity:  one year, plus an additional one year four months for the enhancement, both stayed pursuant to section 654;

**Count Nine -** possession of ammunition by a felon:  eight months, to be served consecutively; and

**Count Ten** - possession of a firearm by a felon:  eight months, to be served consecutively.

Defendant appeals.

5

## DISCUSSION

## I.  Section 654

## A.  Count Three -- First Degree Burglary

Defendant contends the trial court erred by imposing, rather than staying, the sentence for Count Three, first degree burglary, because it was part of an indivisible transaction with the charge of corporal injury on Vanity, charged in Count Seven and the assault with a firearm on Lynn, charged in Count Five.  We disagree.

Section 654, subdivision (a) provides, in pertinent part, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ."  Section 654 errors may be corrected on appeal even if the defendant did not object in the trial court. (*People v. Hester* (2000) 22 Cal.4th 290, 295.)

Section 654 prohibits multiple punishment for multiple crimes arising from a single, indivisible course of conduct.  (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208.) " 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor.  If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' "  (*Ibid*.)

However, if the evidence discloses that a defendant " ' "entertained multiple criminal objectives which were independent of and not merely incidental to each other, the trial court may impose punishment for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." ' "  (*People v. Centers* (1999) 73 Cal.App.4th 84, 98 (*Centers*) [trial court did not err by imposing separate, unstayed sentences for burglary and kidnapping].)

6

The question of whether a defendant entertained multiple criminal objectives is a question of fact for the trial court, and the law gives the trial court broad latitude in making this determination. (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312.) The trial court's findings will be upheld on appeal if substantial evidence supports them. (*Ibid*.) We view the evidence in a light most favorable to the People and presume the existence of every fact in support of the court's determination that the court could reasonably deduce from the evidence. (*Id*. at pp. 1312-1313.)

"Burglary consists of entry into a house or other specified structure with the intent to commit a felony. [Citation.] Thus, ordinarily, if the defendant commits both burglary and the underlying intended felony, Penal Code section 654 will permit punishment for one or the other but not for both. [Citations.]" (*Centers*, *supra*, 73 Cal.App.4th at p. 98.)

Here, there was evidence of multiple criminal objectives in breaking into the apartment -- intent to commit assault and intent to steal -- in that defendant (1) assaulted the victims and (2) demanded money. Consistent with the amended information and the jury instructions, the prosecutor argued in closing argument that defendant committed burglary because "when he entered the dwelling he intended to commit theft, or any felony." He also argued, "So if you think he went in to steal items belonging to Vanity or [Lynn], he is guilty. . . . [¶] . . . [¶] . . . Or if you believe that he went in to beat Vanity or [Lynn] up. He is guilty."

In sentencing defendant, the trial court said, "Consecutive sentences are imposed for Count 3 because the crimes committed here and their objectives were predominantly independent of each other." The trial court also said it imposed a consecutive term on Count Five because "the crimes and their objectives were predominantly independent of each other."

Defendant argues the evidence showed only a single objective. Specifically, he asserts, "viewing the evidence in the light most favorable to the prosecution, the evidence of an entry into the apartment with an intent to 'beat Vanity or Calvin [Lynn]' supports

7

only a single intent and objective for the burglary and the assault and/or spouse abuse [*sic*] convictions . . . ." According to defendant, the evidence shows that these offenses were committed with the singular objective of confronting Vanity inside of the house about having a boyfriend in the house with his daughter. However, there was also evidence of intent to commit theft, because defendant demanded of Lynn, "where is your money at?"

Defendant argues the burglary cannot be predicated on an intent to commit theft, because the jury acquitted him of robbery and theft. We disagree. The acquittal is not necessarily dispositive. For example, a burglar may break in with the intent to steal but, after entry, find nothing worth stealing. Here, defendant tried to steal money by demanding money from Lynn, but was thwarted when Lynn did not have any money. That the jury acquitted defendant of stealing Lynn's keys, helmet and backpack does not mean defendant had no intent to steal when he broke into the apartment.

Substantial evidence supports the trial court's finding of multiple criminal objectives.[3] And our holding is consistent with the often-stated purpose of section 654 -- "to ensure that a defendant's punishment will be commensurate with his culpability." (*People v. Correa* (2012) 54 Cal.4th 331, 341 (*Correa*).) A person who enters a residence with multiple independent felonious objectives is more culpable than a person who has a singular objective in mind.

We need not address the People's argument that multiple punishment is allowed for crimes of violence (including armed burglary) against multiple victims. (*Centers,*

---

[3] We observe that, in the bedroom, defendant asked Lynn, "what are you doing here?" Defendant does not argue he was surprised by Lynn's presence, such that he could not have intended to steal from him before entry into the apartment. In context, defendant's question was not one of surprise but part of a rant expressing displeasure about Lynn being in the apartment with his daughter, who was present and apparently observed part of the assault. Defendant said to Lynn, "what are you doing here? . . . [T]his shit ain't cool. You can't be up in here with my daughter. I should kill your ass."

*supra*, 73 Cal.App.4th at p. 99.)  Defendant does not dispute the propriety of separate sentencing for the assaults on the two victims.

We conclude section 654 does not require stay of sentence on Count Three, first degree burglary.

### B.  Felon in Possession of Firearm and Ammunition

Defendant argues that the trial court should have stayed the sentence for Count Ten, felon in possession of a firearm, a violation of former section 12021,[4] because the court imposed a consecutive sentence on Count Nine, felon in possession of ammunition, a violation of former section 12316,[5] and the two comprised an indivisible transaction.[6] The People agree.

---

[4]  At the time of defendant's crime, section 12021, subdivision (a)(1) provided:  "Any person who has been convicted of a felony under the laws of the United States, the State of California, or any other state, . . . and who owns, purchases, receives, or has in his or her possession or under his or her custody or control any firearm is guilty of a felony." (See Stats. 2008, ch. 599, § 4; Stats. 2010, ch. 711, § 4 [repeal].)

[5]  At the time of defendant's crime, section 12316, subdivision (b)(1) provided:  "No person prohibited from owning or possessing a firearm under Section 12021 or 12021.1 of this code . . . shall own, possess, or have under his or her custody or control, any ammunition or reloaded ammunition."  (See Stats. 2005, ch. 681, § 1; Stats. 2010, ch. 711, § 4 [repeal].)

[6]  Defendant's appellate brief noted that related issues were pending in two cases in the California Supreme Court.  Those opinions issued while this appeal was pending. In *Correa*, our high court held, as a new rule of prospective application only, that section 654 does not bar multiple punishment for violations of the same provision of law.  (*Correa*, *supra*, 54 Cal.4th at p. 344.)  Although the new rule did not apply to the defendant, the Supreme Court affirmed a trial court judgment in which the defendant received seven consecutive terms for seven counts of felon in possession of a firearm for his possession of seven guns, because specific statutory authority made possession of each weapon a separate offense.  (*Id*. at pp. 335, 345-346.)  In *People v. Jones* (2012) 54 Cal.4th 350, our high court held a single possession or carrying of a single firearm on a single occasion may be punished only once under section 654; thus, section 654 prohibited concurrent sentences for being a felon in possession of a firearm (former

9

In *People v. Lopez* (2004) 119 Cal.App.4th 132, the court held that when the ammunition which a defendant is charged with possessing is loaded into a firearm, section 654 precludes multiple punishment. (*Id.* at p. 138.) The court reasoned that "[w]hile possession of an unloaded firearm alone can aid a person committing another crime, possession of ammunition alone will not. The former may be used as a club and a victim may be fearful that the firearm is loaded. While the latter may be thrown at a victim, it is extremely unlikely that possession of bullets alone would scare anyone but the most timid. In combination, however, the mixture is lethal and that is why criminals have a penchant for loaded firearms. [¶] [Defendant's] obvious intent was to possess a loaded firearm." (*Id*. at p. 138.)

The same can be said here, so we agree with defendant and the People that the sentence imposed by the trial court violated section 654. However, since defendant's "obvious intent" was to possess a firearm that could be used as a club and to instill fear in the victims, and the firearm was capable of being fired, we order that the sentence on Count Nine, possession of ammunition by a felon, be stayed instead of Count Ten, possession of a firearm by a felon, as requested by the People and defendant.

## II. Errors in Abstract of Judgment

Defendant argues, and the People concede, that the abstract of judgment contains two clerical errors. The People found a third clerical error, with which defendant agrees. And we observe a fourth clerical error.

An appellate court has inherent power to amend the abstract of judgment to correct clerical errors. (*People v. Hong* (1998) 64 Cal.App.4th 1071, 1075-1076; *People v. Ngaue* (1992) 8 Cal.App.4th 896, 899 & fn. 3.)

---

§ 12021) and carrying a loaded, concealed firearm (former § 12025, subd. (b)(6).) Neither *Correa* nor *Jones* help defendant in this appeal.

10

The first error is that the abstract of judgment states that defendant's total custody credits, "As computed by D.O.C. [are] 00 days" (and the court minutes said "DOC shall compute"), whereas the reporter's transcript shows the trial court awarded defendant 254 actual days' credit and 38 days' conduct credit for a total of 292 days' precustody credit.

"Since the act of oral pronouncement of sentence is a judicial act, the conflicting entry in the clerk's minutes and abstract of judgment is ministerial in nature and correctible by clerical amendment." (*People v. Gardner* (1979) 90 Cal.App.3d 42, 50, fn. 8.) The People concede the error in the abstract of judgment.

The second error, also conceded by the People, is that, although the statutory reference is correct, the abstract of judgment incorrectly describes Count Nine as "Felon in Poss *Firearm*" (italics added), whereas Count Nine was felon in possession of *ammunition*. Count Ten was the firearm count.

The third error, pointed out by the People, is that the trial court stayed sentence on Count Eight, assault with a firearm on Vanity Doe, and the attached enhancement, but the abstract of judgment omits the notation "S" ("stayed") on the enhancement.

We observe a fourth error. The abstract of judgment lists the firearm enhancements on Counts Five and Eight as section 12055, but the enhancements were charged and found true and sentenced as enhancements under section 12022.5, subdivisions (a) and (d).

## DISPOSITION

The judgment is modified to stay defendant's sentence on Count Nine pursuant to section 654. The trial court is directed to prepare an amended and corrected abstract of judgment (1) staying sentence on Count Nine under section 654, (2) correcting defendant's precustody credits to reflect 254 days' actual credit and 38 days' conduct credit for a total of 294 days' presentence custody credit, (3) showing Count Nine as felon in possession of *ammunition*, (4) noting the stay on the Count Eight enhancement,

11

and (5) citing section 12022.5, subdivisions (a) and (d) for the Count Five and Eight enhancements. The trial court shall transmit a certified copy of the modified and corrected abstract of judgment to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.

        MURRAY        , J.

We concur:

       BLEASE       , Acting P. J.

       ROBIE       , J.