[Crim. No. 834. Third Appellate District.—February 16, 1925.]

## THE PEOPLE, Respondent, v. HARRY HUNTER, Appellant.

[1] Criminal Law—Assault With Deadly Weapon—Intention—Present Ability—Evidence.—In a prosecution for assault with a deadly weapon, where it was shown that the defendant, who was separated from his wife, purchased a revolver, made statements to the effect that he was going to take her life, and had the revolver on his person at the time the assault is alleged to have been committed, the intention and present ability of the defendant to kill his wife were sufficiently shown.

[2] Id.—Accomplishment of Unlawful Purpose—Overt Acts.—In such prosecution, where to accomplish his unlawful purpose it was necessary for defendant to take the revolver from his sock, where it was concealed, to point it at his wife, and to pull the

_____

1. See 3 Cal. Jur. 203.

trigger, any one of these would constitute an overt act toward the immediate accomplishment of the intended crime.

[3] ID.—ATTEMPT—ENDEAVOR TO TAKE GUN FROM SOCK—THWARTING OF ATTEMPT.—In such prosecution, defendant's unlawful attempt to take his wife's life was shown by evidence that he was endeavoring to take the gun fiom his sock when his wife thwarted the attempt to kill her by jumping out of a window; and it is immaterial whether defendant succeeded in getting hold of the gun or whether he pointed it at her.

[4] ID.—EVIDENCE—APPEAL.—In such prosecution, the contentions of defendant that the evidence is not sufficient to show that the revolver was loaded, that it was error to admit the same and the cartridges found therein in evidence, and to admit proof that the defendant's wife jumped out of the window to escape from him, are without merit.

[5] ID.—INSTRUCTIONS.—In such prosecution, the trial court did not commit error in refusing to give certain instructions proposed by defendant, where several of such instructions were framed upon the theory that the evidence was insufficient to prove an assault by defendant, and in so far as the proposed instructions contained correct statements of law, they were covered by instructions which the court gave.

(1) 5 **C. J.,** p. 791, n. 24.　(2) 5 **C. J.,** p. 790, n. 6.　(3) 5 **C. J.,** p. 790, n. 8.　(4) 5 **C. J.,** p. 781, n. 80, p. 784, n. 19, p. 791, n. 17. (5)· 5 **C. J.,** p. 1063, n. 85.

APPEAL from a judgment of the Superior Court of Mendocino County and from an order denying a new trial. H. L. Preston, Judge. Affirmed.

The facts are stated in the opinion of the court.

Irving M. Brazier for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

FINCH, P. J.—The defendant was convicted of the crime of assault with a deadly weapon. He prosecutes this appeal

4. Burden of proving that weapon was not loaded in prosecution for assault with firearm, note, 42 **L. R. A. (N. S.)** 975. See, also, 2 **R. C. L.** 546.

from the judgment and the order denying his motion for a new trial.

In August, 1924, defendant's wife commenced an action against him for divorce. Thereafter she and their two children resided at the Bolden Apartments in Fort Bragg and the defendant occupied a room at the White House in the same town. On the 17th or 18th of September the defendant, who had not been in the habit of carrying a gun, purchased a revolver and a box of cartridges. In the afternoon of the 18th he asked his wife to let him take dinner with her and the children at her apartment that evening, saying he was going away the next day, and she consented. He spent the evening in the apartment with them and while there made statements from which it might be inferred that he intended to kill his wife and take his own life. His wife had difficulty in persuading him to leave but, upon her promise that he might return the next morning at 9 o'clock, he finally left. The next morning about 7:30 he called at a barber-shop of which he and his wife were both patrons and while there said to the proprietor, "I don't think my wife will bother you any more." He then went to his wife's apartment and there took frequent drinks from a bottle of intoxicating liquor which he had with him. His wife testified that after the children left for school "he says to me, 'If you have any arguments make them quick. . . . You are not going to leave this room until I do. I am going to kill you. We are both going to die on that bed together. I have stood enough of this.' And I got up out of my chair and threw my right arm around his neck and said, 'No, let's not do that, let's be friends,' and he stooped over and pulled at his pants leg and said, 'No, I am going to use it.' Q. Where did he have the gun? A. On his right leg on the outside in his sock and the sock was thin and it shown through his sock and was shiny and the whole print of it was there, . . . and he said, 'No, I am going to do it,' and bent over and went at it that way (indicating) to get the gun. . . . He just made it like a madman. He had a garter on, which he never wore before and he was trying to unfasten it, when he said, 'I am going to do it, I am going to do it,' just as fast as he could, like that (indicating). It seems as I stuck my head and shoulders out of the window

something told me to get out of there and I threw my legs out— . . . and he grabbed me by the coat collar— . . . Q. And you went out of the window and down to the street below? A. On the cement sidewalk, yes. . . . He never shot. . . . When he began so fast like this to get the gun I never looked back, and when he grabbed me I slipped on to the sidewalk. . . . Q. Did he pull his pants leg up? A. Yes. . . . I should judge just under his knee. . . . He says, 'Do you see that thing? I am going to kill you on that bed and then kill myself.' . . . He said it fast and very low. . . . He was wrestling with it to get it out of his sock. . . . Q. You mean he had his hands down— A. He had both of them down going just that way, as fast as he could (indicating). . . . He was attempting to get it but I didn't wait. I never saw it after he got it out. . . . He made an effort to get it out of his sock.'' A witness who was across the street at the time testified that he heard screaming and saw Mrs. Hunter drop from the window to the sidewalk, a distance of sixteen or eighteen feet below; that she said, ''He is going to kill me or trying to shoot me or something to that effect''; and that he saw the defendant standing in the window at the time. Another witness gave testimony to the same effect. About thirty minutes later the defendant was found in bed, in his room at the White House, fully dressed. At about 8 o'clock in the evening of the 19th, the defendant's revolver, fully loaded, was found under a mattress in his wife's apartment. The defendant testified at his preliminary examination but not at the trial. His counsel introduced at the trial a transcript of all the testimony taken at the preliminary examination. At such examination the defendant testified that at the time of the alleged crime he ''was pretty near rum dum with this booze they sell around here''; that he did not have the revolver at the time; that he had placed it under the mattress the evening before, ''awhile after the children went to bed. . . . I didn't want it to be found on me''; that he did not know that his wife jumped out of the window, ''I didn't have presence of mind enough. I was too crazy, I guess.''

Appellant contends that the evidence is insufficient to prove the alleged assault in that it does not show that the defendant attempted to use the weapon. ''An assault is an

unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another.'' (Pen. Code, sec. 240.)   [1]   The evidence is ample to show that the defendant had the intention and the present ability to kill his wife. The only question remaining is whether he attempted to carry his purpose into execution.   [2]   To accomplish that purpose, it was necessary for him to take the gun from his sock, to point it at his wife, and to pull the trigger.   Any one of these would constitute an overt act toward the immediate accomplishment of the intended crime.   [3]   He was endeavoring to take the gun from his sock when his wife thwarted the attempt to kill her by jumping out of the window.   Naturally she did not wait to see whether he succeeded in getting hold of the gun or whether he pointed it at her, and it is immaterial whether he did either.   The actual transaction had commenced which would have ended in murder if it had not been interrupted.   In *People* v. *Stites,* 75 Cal. 570 [17 Pac. 693], the defendant approached a railroad track with an explosive in his possession which he intended immediately to place upon the track but, because of the presence of police officers, he retreated without accomplishing his purpose.   It was held that he was guilty of an attempt to place an obstruction upon the track.   (See, also, *People* v. *Mayen,* 188 Cal. 237, 256 [24 A. L. R. 1383, 205 Pac. 435], and cases there cited.)   The facts in the instant case are not essentially different in principle from those in *People* v. *McMakin,* 8 Cal. 547, and *People* v. *Piercy,* 16 Cal. App. 13 [116 Pac. 322], where like judgments were affirmed.

[4]   Appellant contends that the evidence is not sufficient to show that the revolver was loaded, that it was error to admit the same and the cartridges found therein in evidence, and to admit proof that the defendant's wife jumped out of the window to escape from him.   The contentions are so manifestly without merit, as appears from the evidence herein stated, that no discussion thereof is deemed necessary.   [5]   The refusal of the court to give certain instructions proposed by the defendant is assigned as error.   Several of these instructions are framed upon the theory that the evidence is insufficient to prove an assault by defendant.   In so far as the proposed instructions contain correct statements

of law, they are covered by instructions which the court gave. All other grounds urged for a reversal are trivial and need not be discussed. The evidence is clear and convincing and no logical basis is suggested upon which the jury could have returned a different verdict.

The judgment and the order are affirmed.

Hart, J., and Plummer, J., concurred.