[Crim. No. 4371. Second Dist., Div. Three. Sept. 30, 1949.]

THE PEOPLE, Respondent, v. BENJAMIN MEARSE, Appellant.

Philip M. Schwabacher for Appellant.

Fred N. Howser, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

WOOD, J.—Defendant was charged in count one of an information with assault with a deadly weapon with intent to commit murder, and in count two thereof with assault with a deadly weapon. Trial by jury was waived. Defendant was found not guilty as charged in count one, and guilty as charged in count two. He appeals from the judgment and sentence and from the order denying his motion for a new trial.

Appellant contends that the verdict is contrary to law and the evidence.

On August 2, 1948, while Leon Jefferson was lying on a bed in his trailer home in Lancaster he was shot by an unknown assailant. Defendant herein was charged with that crime in count one of this case and, as above stated, was found not guilty. Count two herein relates to an incident which occurred in the early morning of September 15, 1948 (soon after midnight), at which time defendant allegedly assaulted Jefferson with a shotgun. The defendant resided with Mr. and Mrs. Barker in a tent about 6 miles from Lancaster. On September 14, 1948, about 7:30 p.m. Jefferson and one Ramsey went in Ramsey's automobile to the Barker tent. Mr. and Mrs. Barker and defendant got into the automobile with Jefferson and Ramsey, and they all remained in the parked automobile for some time and drank beer. Later in the evening Mr. Barker left the automobile and went into the tent. About 11:30 p.m. Jefferson got out of the automobile (leaving Mrs. Barker, Ramsey, and the defendant in the automobile) and went into the tent where he talked to Mr. Barker. Later Mrs. Barker left the automobile, entered the tent, and went through it to its opposite entrance. Then she said, ''What you doing around here, Ben? [apparently addressing the defendant, Benjamin Mearse].'' Jefferson then said, ''What is this setup?—I can't forget I got plugged about a month ago,'' and thereupon he left the tent and went back to the automobile. About five minutes later he saw the defendant come out of the tent and walk in the direction of the house where defendant's father lived, which house was about 600 feet from the Barker tent. Jefferson then returned to the tent. Defendant went into his father's house and took therefrom an unloaded single barrel .16 gauge shotgun and two .16 gauge shotgun shells. He then returned to a place near the Barker tent and fired the gun. Defendant testified that he fired toward the ground. Jefferson testified that he heard a shot, and then heard the defendant say: ''You said I plugged you a month ago. You better come out because I am going to give it to you tonight.'' Jefferson ran out of the tent and in the direction of the house of defendant's father. Defendant chased him, and while doing so the defendant carried the shotgun. Jefferson testified that while running he did not look back, but several times defendant said ''Halt or I'll shoot,'' and that it seemed, ''from his voice,'' the defendant was running right behind him;

that the witness ran directly to the house of defendant's father, but the defendant "stopped somewhere between [the tent and the house]." The defendant testified that he chased Jefferson about 30 feet, and told him to "halt there" but he did not tell him he would shoot "because I didn't have nothing in the gun"; that he knew there was nothing in the gun "because I looked in it." Thereafter Mrs. Barker ran to the house of defendant's father and the father then went to the Barker tent. The father testified that when he arrived at the tent, he saw defendant standing behind Ramsey's automobile with the gun in his hand; that he asked defendant for the gun, and defendant handed it to him. Defendant, at his father's request, then went to the father's house. The father also returned to his house, put the shotgun in his bedroom, and went in his automobile to the sheriff's office in Lancaster. After talking to deputy sheriffs there he returned home, and about 20 minutes later two officers arrived. They asked for the gun and he gave it to them. At that time an unexploded shell was in the gun.

Appellant asserts that there was no adequate proof that the gun was loaded at the time he was running after Jefferson. He testified that while he was near the tent he fired the gun toward the ground, and that he then ejected the empty shell but he did not reload the gun. On the evening the gun was fired an empty shell was found by an officer about 35 feet from the tent, and that shell was one of the two shells taken by defendant from his father's house. When defendant's father gave the gun to the officers it was loaded with the other shell which defendant had taken from the house. Defendant testified that he reloaded the gun, but said that he did it after he had chased Jefferson. He gave contradictory testimony, however, as to when (after chasing Jefferson) he reloaded the gun. He testified that he placed the second shell in the gun when he "went back away from him [Jefferson]." He later testified that he put the shell in the gun while his father was walking "over there [to the tent]." It also appears that his testimony, regarding the reloading of the gun, was inconsistent with his statement to the deputy sheriff prior to the trial. A deputy sheriff testified that, in a conversation with defendant prior to the trial, the defendant said (regarding the reloading of the gun): "Well, I must have done it, but I don't remember doing it." The evidence that defendant told Jefferson to halt or "I'll shoot" indicates that the gun was loaded when defendant made that command

and threat. A further indication that the gun was loaded was defendant's statement to Jefferson after he had fired the first shell, that "You said I plugged you a month ago. . . . I am going to give it to you tonight." Defendant testified that he got the gun because he was mad at Jefferson. A deputy sheriff testified that defendant told him that one reason he did not like Jefferson was that Jefferson "was messing around" Mrs. Barker. In order to get the gun and ammunition and return to the tent defendant walked about 1,200 feet. According to defendant's testimony, above referred to, he reloaded the gun after he had given up his pursuit of Jefferson. It is to be noted, however, that he offered no explanation for reloading the gun at that time. Defendant, after chasing Jefferson, returned to Ramsey's automobile and demanded that Ramsey open the automobile trunk, and Ramsey opened it. Defendant testified that he looked in the automobile trunk because he thought Jefferson might be there. As above shown, defendant was standing by the automobile, with the loaded gun in his hand, when his father arrived.

The acts and language used by an accused person while carrying a gun may constitute an admission by conduct that the gun is loaded. (See *People* v. *Hall,* 87 Cal.App. 634, 636 [262 P. 50].) In *People* v. *Montgomery,* 15 Cal.App. 315 [114 P. 792], the charge was assault with a deadly weapon. The defendant therein had leveled a rifle at one Freehardt and said "I have got you now." There was no direct evidence that the rifle was loaded. It was held therein that whether the gun was loaded was a question of fact for the jury to be determined from the circumstances. It was stated therein at page 319, "We think there were facts and circumstances sufficient to justify the implied finding that the gun was loaded when defendant said to Freehardt, 'I have got you now.' " In the present case the statement of defendant, "I am going to give it to you tonight," made immediately after the firing of the gun, and the several statements of defendant, "Halt or I'll shoot," made while pursuing Jefferson, when considered in connection with all the other circumstances, were sufficient to support a finding that the gun was loaded.

Appellant also asserts, in effect, there was no evidence that he made an attempt to discharge the gun while pursuing Jefferson. "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (Pen. Code, § 240.) The evidence was sufficient to support the implied finding that defendant attempted to

commit a violent injury on the person of Jefferson and that he had the present ability to do so. (*Cf.*, *People* v. *McCoy*, 25 Cal.2d 177, 189 [153 P.2d 315]; *People* v. *Womble*, 67 Cal.App.2d 885, 889 [155 P.2d 838]; *People* v. *Hunter*, 71 Cal.App. 315, 319 [235 P. 67].)

The purported appeal from the sentence is dismissed. (Pen. Code, § 1237; see *People* v. *Tallman*, 27 Cal.2d 209, 215 [163 P.2d 857].) The judgment and order are affirmed.

Shinn, P. J., and Vallée, J., concurred.