Filed 9/9/15  P. v. Williams CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE


THE PEOPLE,

     Plaintiff and Respondent,

     v.

MICHAEL C. WILLLIAMS,

     Defendant and Appellant.

_____/

A143066

(Solano County
Super. Ct. Nos. FCR300442,)
FCR305731)

In case No. FCR305731, a jury convicted appellant Michael C. Williams of felony assault with a deadly weapon (§ 245, subd. (a)(1))[1] and misdemeanor exhibiting a deadly weapon (§ 417, subd. (a)(1)).  The court found sentencing enhancement allegations true (§ 667.5, subd. (b)).  In case No. FCR300442, the court revoked and terminated Williams's probation based on the trial testimony in case No. FCR305731.  At a combined sentencing hearing on both cases, the court sentenced Williams to state prison and imposed various fines and fees, including restitution (§ 1202.4) and probation revocation fines (§ 1202.44).

Williams appeals from the combined judgment.  He contends: (1) insufficient evidence supports the assault with a deadly weapon conviction (§ 245, subd. (a)(1)) in case No. FCR305731; (2) the court erroneously declined to instruct the jury with

---

[1]     Unless noted, all further statutory references are to the Penal Code.

1

CALCRIM No. 3470 in case No. FCR305731; and (3) the restitution and probation revocation fines should be reduced to $280 in case No. FCR300442. The People agree these fines should be reduced. We accept the People's concession and modify the judgment accordingly. In all other respects, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*Case No. FCR300442*

Williams pled no contest to possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)) and admitted a prior prison term (§ 667.5, subd. (b)). In September 2013, the court placed Williams on probation and imposed and stayed a $280 restitution fine (§ 1202.4) and a $280 probation revocation fine (§ 1202.44).

*Case No. FCR305731*

The People charged Williams with felony assault with a deadly weapon (§ 245, subd. (a)(1)) and misdemeanor exhibiting a deadly weapon (§ 417, subd. (a)(1)) and alleged prior prison terms (§ 667.5, subd. (b)).

A.     *Prosecution Evidence*

On a February 2014 evening, William Apostolos left a sporting goods store in Vacaville. As Apostolos walked toward his car in the parking lot, he heard "commotion . . . going on to [his] right." A man—later identified as Williams—was "yelling, shouting commands towards" a woman in the bed of a pickup truck. Williams was "removing items" from the bed of the truck and yelling, "'Bitch, get the fuck out of my truck. Get the fuck out of my truck. Get your shit and get the fuck out.'" Williams "repeated that . . . five or six more times." An infant in a carseat and a girl between five and eight years old were near the truck. The woman "was saying something" to Williams, but Williams's "voice was over-powering her voice."

Apostolos walked toward the truck, but stopped about 25 to 30 feet away from it. Apostolos "was basically . . . making them aware that there was a person present . . . witnessing the events that were going on. . . . [His] main purpose was to make sure that the anger and the frustration that [he] noticed with [Williams] did not turn toward the kids." Williams approached Apostolos. From about five to seven feet away, Williams

2

said, "'You're not going to PoPo me. This is not going to go to the PoPo. You're not going to PoPo me.'" Apostolos "took two to three steps back, away from the situation[.]" Without raising his voice, he responded, "'My job here, sir, is just to make sure that the kids are okay. You can deal with your situation with the female. I'm just here to protect the kids.'" Williams said, "'Mind your own fucking business. This is not your business. Get the fuck out of here.'"

Williams yelled something at the woman in the truck and then turned back to Apostolos. Williams came "within a foot" of Apostolos and yelled, "'This is none of your fucking business. Get the fuck out of here[.]'" Apostolos "took another two steps back" and again explained that as a teacher, he was a "mandated reporter" and his "job [was] to protect the kids." Apostolos's voice was calm and he did not gesture aggressively. At that point, a security guard approached the truck. Williams walked over to the security guard and shook the guard's hand. In a "positive tone," Williams told the security guard, "'I understand why you're here'" but then shouted to Apostolos, "'I don't understand why the fuck you're here. You need to get the fuck out of here.'"

Williams approached Apostolos again, this time "coming face to face with [Apostolos], nose to nose, and making physical contact" with him. Again Williams threatened, "'Get the fuck out of here. You don't know what's going to happen. Get the fuck out of here. This is none of your fucking business.'" Apostolos moved back, away from Williams, and reiterated why he was there. Then Williams said, "'I got something for you, mother fucker'" and went back to the truck. Williams grabbed a "full-sized pickaxe" with both hands. With the pickaxe raised over his shoulder and the pointed end facing outward, Williams "made his way towards" Apostolos.

Apostolos took several steps back and put his hands up to protect his face, with his palms facing Williams. With a "50 to 60 percent" swing, Williams brought the pickaxe down so "the top of the pickaxe . . . made contact with [Apostolos's] front arm[.]" Apostolos was afraid, but uninjured. He asked Williams what he was doing and said, "'Put that fucking thing down.'" Williams returned to the truck with the pickaxe and yelled, "'Get the fuck in the car. Get the shit in the car. Let's go. Let's go.'" Then

3

Williams drove away with the woman and children.  A Vacaville police officer arrested Williams and found the pickaxe in Williams's truck.

      B.     *CALCRIM No. 3470*

Defense counsel requested the court instruct the jury with CALCRIM No. 3470,[2] which concerns the prosecution's burden to prove beyond a reasonable doubt the absence of the defendant acting in self-defense or defense of another.  (See *People v. Lloyd* (2015) 236 Cal.App.4th 49, 63.)  During a hearing on the proposed jury instructions, the parties discussed the issue with the court:

"THE COURT:  . . . Now, I did see a request by the defense . . . for a self-defense instruction.

"[Defense counsel]:  I did submit that.

"THE COURT:  Are you withdrawing that?

"[Defense counsel]:  Well, I submitted it anticipating the testimony of Mr. Apostolos . . . that he was in close proximity to the children.  And my request with self-defense is that it's defense of others.

"THE COURT:  Comment?

"[Prosecutor]:  There's been no evidence whatsoever presented that Mr. Apostolos was acting in an aggressive manner or in any way that he posed a defense of others request, period.  So I don't think it's appropriate.  And I would object to that instruction."  The court declined to instruct the jury with CALCRIM No. 3470, explaining "there's no evidence that there was a need for self-defense on the part of the defendant, based upon the evidence presented."

---

[2]     Under CALCRIM No. 3470, a defendant acts in lawful self-defense or defense of another if he: (1) reasonably believed he or someone else "was in imminent danger of suffering bodily injury," or "was in imminent danger of being touched unlawfully;" (2) "reasonably believed that the immediate use of force was necessary to defend against that danger;" and (3) "used no more force than was reasonably necessary to defend against that danger."

*Verdict and Sentencing in Both Cases*

In case No. FCR305731, a jury convicted appellant of felony assault with a deadly weapon (§ 245, subd. (a)(1)) and misdemeanor exhibiting a deadly weapon (§ 417, subd. (a)(1)) and the court found true the prior prison term allegations (§ 667.5, subd. (b)). In case No. FCR300442, the court revoked and terminated Williams's probation based on the trial testimony in case No. FCR305731. At a combined sentencing hearing in both cases, the court sentenced Williams to state prison and increased the restitution fine (§ 1202.4) and probation revocation fines (§ 1202.44) imposed in case No. FCR300442 from $280 to $300. Williams appealed from the combined judgment.

DISCUSSION

I.

*Sufficient Evidence Supports the Assault with a Deadly Weapon Conviction*

Williams contends insufficient evidence supports his conviction for assault with a deadly weapon (§ 245, subd. (a)(1)) in case No. FCR305731. "When considering a challenge to the sufficiency of the evidence to support a criminal conviction, we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Cortes* (1999) 71 Cal.App.4th 62, 71.) "In making this determination, we do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses." (*Id.* at p. 71.) "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.)

Section 245, subdivision (a)(1) prohibits "an assault upon the person of another with a deadly weapon or instrument other than a firearm." "[A]ssault does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur. Rather, assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in

5

the application of physical force against another." (*People v. Williams* (2001) 26 Cal.4th 779, 790; see also CALCRIM No. 875.) Courts have upheld convictions for assault with a deadly weapon where "a defendant's action enabl[es] him to inflict a present injury[,]" even if an injury does not occur. (*People v. Chance* (2008) 44 Cal.4th 1164, 1172 (*Chance*) ["'drawing a sword or bayonet, or even laying one's hand upon his sword, would be sufficient'" to constitute assault]; *People v. Hunter* (1925) 71 Cal.App. 315, 318 [the defendant committed assault where he tried to pull a gun from his sock, even though the victim was gone before he could shoot]; *People v. Yslas* (1865) 27 Cal. 630, 633-634 [approaching the victim with a raised hatchet constituted assault even though the defendant did not reach the victim, or swing the hatchet].)

Here, Williams yelled numerous profanities at Apostolos and demanded he leave and mind his own business. When Apostolos explained—in a calm, nonthreatening manner—why he refused to leave, Williams said, "'Well, I got something for you, mother fucker [,]'" went to his truck, and retrieved a pickaxe. Williams raised the pickaxe over his shoulder and swung it at Apostolos. The pickaxe hit Apostolos, even though he backed away and raised his hands to protect himself. Under the authority cited above, this evidence is more than sufficient to support a conviction for assault with a deadly weapon in violation of section 245, subdivision (a)(1). (*Chance, supra,* 44 Cal.4th at p. 1166 [pointing loaded gun at place where the defendant believed the police officer would appear constituted assault].)

Williams claims "the prosecution failed to prove that he had done anything other than brandish the pickaxe."[3] According to Williams, he did not commit an assault because he merely "lost total control of the pickaxe[.]" This argument fails because there is no evidence supporting it. As we have discussed, the evidence overwhelmingly demonstrates Williams threatened Apostolos, intentionally retrieved the pickaxe from his

---

3   Section 417 makes it a misdemeanor to "except in self-defense, in the presence of any other person, draw[ ] or exhibit[ ] any deadly weapon whatsoever, other than a firearm, in a rude, angry, or threatening manner" or to "unlawfully use[ ] a deadly weapon other than a firearm in any fight or quarrel . . . ."

truck, and deliberately raised it over his shoulder and swung it at Apostolos. The cases Williams cites to support his argument — including *People v. Jasso* (2012) 211 Cal.App.4th 1354 — are completely inapposite. Here, there is absolutely no evidence suggesting Williams's use of the pickaxe was accidental. We conclude sufficient evidence supports Williams conviction for assault with a deadly weapon (§ 245, subd. (a)(1)).

## II.

*The Court Properly Refused to Instruct the Jury with CALCRIM No. 3470*

Williams argues the court erred by refusing to instruct the jury with CALCRIM No. 3470 in case No. FCR305731. "A trial court has no duty to instruct the jury on a defense—even at the defendant's request—unless the defense is supported by substantial evidence." (*People v. Curtis* (1994) 30 Cal.App.4th 1337, 1355.) Evidence is substantial if "a reasonable jury could find [it] persuasive." (*People v. Barton* (1995) 12 Cal.4th 186, 201 & fn. 8.) We independently review whether the trial court erred in failing to instruct on the defendant's defenses. (*People v. Oropeza* (2007) 151 Cal.App.4th 73, 78.)

Williams claims "the evidence supported giving" CALCRIM No. 3470 because he was concerned about Apostolos "looming over his children." He is wrong. There is no evidence Williams reasonably believed his children were "in imminent danger of suffering bodily injury," or "in imminent danger of being touched unlawfully[.]" (CALCRIM No. 3470.) As we have discussed, Apostolos stood 25 to 30 feet away from Williams and watched as Williams berated his companion in front of young children. When Williams confronted him, Apostolos calmly explained his purpose for being there and did not act aggressively. Under the circumstances, there court did not err by refusing to instruct the jury with CALCRIM No. 3470. (*People v. Stitely* (2005) 35 Cal.4th 514, 551.)

III.

*The Restitution and Probation Revocation Fines Should be Reduced*

Williams contends—and the People agree—the restitution and probation revocation fines (§§ 1202.4, 1202.44) imposed in case No. FCR300442 should be reduced from $300 to $280. They are correct. (*People v. Chambers* (1998) 65 Cal.App.4th 819, 823.) We accept the parties' agreement and modify the combined judgment to reduce the restitution (§ 1202.4) and probation revocation fines (§ 1202.44) from $300 to $280, and to reflect that the $280 probation revocation restitution fine (§ 1202.44) is now due and payable. (See *People v. Guiffre* (2008) 167 Cal.App.4th 430, 435.)

DISPOSITION

The combined judgment in case Nos. FCR300442 and FCR305731 is modified to: (1) reduce the restitution fine (§ 1202.4) in case No. FCR300442 from $300 to $280; (2) reduce the probation revocation fine (§ 1202.44) in case No. FCR300442 from $300 to $280; (3) reflect that the $280 probation revocation restitution fine (§ 1202.44) in case No. FCR300442 is now due and payable. The court is directed to prepare an amended abstract of judgment in case Nos. FCR300442 and FCR305731 reflecting these modifications, and to send a certified copy to the Department of Corrections and Rehabilitation. As modified, the combined judgment in case Nos. FCR300442 and FCR305731 is affirmed.

8

_____

Jones, P.J.

We concur:

_____

Needham, J.

_____

Bruiniers, J.

A143066

9