Filed 8/26/16  In re Luis V. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re Luis V., a Person Coming Under the Juvenile Court Law. | |
| | D068248 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. JCM236796) |
| v. | |
| LUIS V., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, David M. Gill and Roderick W. Shelton, Judges.  Affirmed and remanded with direction.

Sheila O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Christen Somerville, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

After an adjudication hearing, the juvenile court sustained a Welfare and Institutions Code section 602 petition against Luis V. (hereinafter the minor) charging him with assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1); count 1),[1] misdemeanor battery against a police officer (§ 243, subd. (b); count 3), and misdemeanor resisting or obstructing an officer in the performance of his duties (§ 148, subd. (a)(1); count 4). The court also found true the allegation in count 1 was a serious felony (§ 1192.7, subd. (c)(23)).[2] The juvenile court declared the minor a ward of the court pursuant to Welfare and Institutions Code section 602 and found his maximum confinement was four years and eight months. The court placed the minor under the supervision and custody of probation and placed him at his grandmother's home.

On appeal, the minor asks us to vacate the true finding on count 1 and to remand the matter for further disposition based upon five contentions: (1) there was insufficient evidence to support a true finding of assault with a deadly weapon, (2) there was insufficient evidence to support a true finding on the serious felony allegation, (3) the court failed to make an oral pronouncement of its true finding on the serious felony allegation, (4) the court abused its discretion in declining to reduce count 1 to a misdemeanor, and (5) the court should have stayed punishment for resisting a peace

---

[1]    Further statutory references are to the Penal Code unless otherwise indicated.

[2]    The court dismissed count 2, which charged the minor with making criminal threats (§ 422).

2

officer (count 4) under section 654 because it was part of an indivisible course of conduct with the battery against a peace officer (count 3). We disagree with the first four contentions and affirm the true findings. However, we agree with the fifth contention and remand the matter for further disposition consistent with our decision.

## BACKGROUND

### A

On March 1, 2015, the minor's 16-year-old brother was in the garage of his home connecting speakers to a car when the minor, who was 15 years old, came in asking his brother about the price for a pair of boots. They discussed making a deal about changing rooms if the minor correctly guessed the price of the boots.

The minor went into the kitchen to research the prices for a pair of boots and, when he came out to discuss the prices, the brother said he did not have time to deal with it then. When the minor insisted, the two started arguing and pushing each other. The minor picked up the speakers and threw them at his brother. The speakers were about two feet wide and weighed as much as a microwave oven.

When the brother pushed the minor away from him, the minor ran into the kitchen yelling, "You're not my brother. I hate you. I'm going to kill you." The kitchen was one to four feet from the garage with a door separating the rooms. The door was open initially.

The minor's mother heard the speaker crash on the floor and went out to the garage and pulled the minor inside the kitchen. She hugged him until he asked her to let him go.

3

The mother's friend, heard the commotion and went to the kitchen where she saw the minor's mother hugging him and telling him to calm down. The minor looked mad. The mother's friend went to the garage to speak with the minor's brother, but remained in the doorway between the kitchen and the garage.

When mother let the minor go, the minor went to the sink, about 10 feet from the door, and grabbed a knife. Mother hugged him again because he had a knife and she did not know what he was going to do. He struggled with her and told her to let him go. The mother's friend closed the door to the garage when she saw the minor grab the knife.

The minor's brother sent a friend to get help. He heard screaming from inside, such as "Let me go. Let me go." He also heard them slamming against the door as their mother tried to hold the minor from coming through the door. The brother was seated on a couch in the garage about four feet from the kitchen door. At the adjudication hearing, the brother said he never feared the minor was going to kill him.

At one point, the minor turned the knife toward himself and started crying. He eventually dropped the knife. The minor then said, "But he will pay for this. If not now, later."

When mother's friend reopened the kitchen door, she saw the minor leaning against the refrigerator crying with the knife on the ground. Mother's friend grabbed the knife and threw it behind the microwave. She heard the minor say, "I'm going to kill him."

The minor called 911 and asked for sheriffs to come to the home. He said he was "about to stab a knife on my brother."

The minor told a responding deputy sheriff about the argument with his brother and said he intended to kill his brother with the knife, but his mother held him back. He then said he was thinking about stabbing himself with the knife. He said his mother said if he stabbed himself, she would stab herself. He decided to drop the knife because he did not want his mother to be hurt. He said he called 911 because if the sheriffs did not come, he would end up stabbing his brother.

One of the deputy sheriffs spoke to the mother in Spanish. The mother reported the minor and his brother made a bet about switching rooms based on the price of the boots. When the minor tried to talk to his brother about the prices of boots he found online, the brother said he was busy. The minor became upset and cursed at his brother, who told him to leave. The minor threw speakers at his brother and then ran inside the kitchen stating he was going to kill his brother. The mother reported she followed the minor inside and grabbed him where they struggled for a time. When he broke free, he ran to grab a knife and headed toward the garage. The mother bear-hugged him from behind and pleaded with him to stop. The minor insisted he was going to kill his brother. The minor eventually turned the knife on himself saying, "If you don't let go of me, I'm going to do something else." The minor eventually dropped the knife, but said, "If I see my brother, I'm going to kill him." The minor placed the 911 call. At the adjudication hearing, mother denied telling the police the minor said he was going to kill his brother

when he saw him. She also denied telling the police the minor said if she did not let him kill his brother, he would do something else.

The brother told a deputy sheriff the minor threw a speaker at him, which missed, and then the minor ran into the kitchen and grabbed a knife to stab him. The brother appeared to feel guilty for telling the deputy his brother reached for a knife.

B

The minor was detained in the back of a patrol car. The minor took his seat belt off and was trying to get his handcuffs in front of him when a deputy sheriff called other deputies to assist. One deputy asked the minor what he was doing. When the minor did not respond, the deputy opened the car door and the minor tried to get out of the car. The deputy held the minor's legs down and put his hand on the minor's shoulder to replace the seat belt. The minor began swearing and then spit in the deputy's face. Two deputies held the minor's head down so they could place a spit sock over the minor's head and replace the seat belt.

DISCUSSION

I

*Sufficiency of the Evidence for True Findings of Count 1
and Serious Felony Allegation*

A

"The same standard governs review of the sufficiency of evidence in adult criminal cases and juvenile cases." (*In re Matthew A.* (2008) 165 Cal.App.4th 537, 540.) " ' "When considering a challenge to the sufficiency of the evidence to support a

6

conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.] We determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.] In so doing, a reviewing court "presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' " (*People v. Rangel* (2016) 62 Cal.4th 1192, 1212-1213.) We will reverse only if it appears " ' "that upon no hypothesis whatever is there sufficient substantial evidence to support the [true finding]." ' " (*People v. Cravens* (2012) 53 Cal.4th 500, 508.)

B

The minor contends there was insufficient evidence he had the present ability to commit assault because he "was in a separate room, with a closed door and two adults between [him] and his older brother." We disagree.

Section 245, subdivision (a)(1), makes it a crime to commit "an assault upon the person of another with a deadly weapon or instrument other than a firearm." Section 240 defines assault as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." The Supreme Court has held "assault is a general intent crime, 'established upon proof the defendant wilfully committed an act that by its nature will probably and directly result in injury to another, i.e., a battery.'

7

[Citations.] … [A] defendant must 'actually know[] those facts sufficient to establish that his act by its nature will probably and directly result in physical force being applied to another.' " (*People v. Chance* (2008) 44 Cal.4th 1164, 1169 (*Chance*).)

The present ability element of assault "is satisfied when 'a defendant has attained the means and the location to strike immediately.' [Citations.] In this context, however, 'immediately' does not mean 'instantaneously.' It simply means that the defendant must have the ability to inflict injury on the present occasion. Numerous California cases establish that an assault may be committed even if the defendant is several steps away from actually inflicting injury, or if the victim is in a protected position so that injury would not be 'immediate,' in the strictest sense of that term." (*Chance*, *supra*, 44 Cal.4th at p. 1168.)

In *Chance,* the court concluded a defendant who positioned himself in a sheltered location and pointed a loaded gun in the direction of where he thought an officer would be positioned was guilty of assault because the defendant had the present ability to inflict injury on the present occasion. This was true even though the officer was able to take evasive action and approached the defendant from behind. (*Chance*, *supra*, 44 Cal.4th at pp. 1175-1176.) In *People v. Valdez* (1985) 175 Cal.App.3d 103 the court affirmed an assault conviction for a defendant who fired a gun at a gas station attendant who was sheltered behind a bulletproof window. The court concluded the defendant had the present ability to commit assault even though bulletproof glass foiled his attempt to inflict injury. (*Id.* at pp. 106, 112.)

The minor attempts to distinguish these authorities by stating "no gun was fired, no stabbing took place, no close calls occurred." This argument is not persuasive. The *Chance* court stated, "when a defendant equips and positions himself to carry out a battery, he has the 'present ability' required by section 240 if he is capable of inflicting injury on the given occasion, even if some steps remain to be taken, and even if the victim or the surrounding circumstances thwart the infliction of injury." (*Chance*, *supra*, 44 Cal.4th at p. 1172.) The *Chance* court cited with approval earlier cases in which defendants were found guilty of assault even though the victims were able to take evasive action or escape before the defendant could deploy a weapon. (*Id.* at p. 1174, citing *People v. Yslas* (1865) 27 Cal. 630, 631, 633-634 [victim escaped a defendant approaching with a raised hatchet by running into another room and locking the door] and *People v. Hunter* (1925) 71 Cal.App. 315, 318-319 [victim jumped from a window before defendant could pull a gun from his sock].)

The same analysis applies here. There was substantial evidence to support the juvenile court's finding the minor committed an assault. The minor, who had already declared his intention to kill his brother, broke free from his mother's grasp, obtained a knife, and was headed back to the garage before his mother bear-hugged him and the mother's friend shut the door. The fact the mother was able to restrain the minor and the friend was able to close the door was fortuitous. It does not, however, mean the minor did not have the present ability to inflict injury at the time he armed himself and headed for the garage where his brother was located, approximately 14 feet away.

9

C

The minor also contends there was insufficient evidence to support the juvenile court's true finding the minor committed a serious felony under section 1192.7. We disagree.

1

At the outset of this discussion, however, we deal with the issue raised in the minor's supplemental opening brief contending the juvenile court failed to make an oral finding on the serious felony allegation. We disagree and believe the argument is based upon a misreading of the record.

As a general rule, judgment shall be pronounced orally in the presence of the defendant (§ 1193) and " 'it must reflect the court's determination of the matter before it.' " (*People v. Wilshire Ins. Co.* (1977) 67 Cal.App.3d 521, 532.) In this case, we conclude the reporter's transcript sufficiently reflects the court's true finding as to the serious felony allegation. As such, we are not required to consider whether such findings could be made impliedly. (See *People v. Chambers* (2002) 104 Cal.App.4th 1047, 1050-1051.)

At the conclusion of the People's evidence at the adjudication hearing, the court considered the minor's motion under section 701.1 to dismiss counts 1 and 2. After hearing arguments from counsel, the juvenile court granted the motion as to count 2 and denied the motion as to count 1.

Immediately thereafter, the court stated, "The [c]ourt does find the evidence is sufficient to sustain proof beyond a reasonable doubt and sustain[s] Count 1 *and its accompanying allegation*." (Italics added.) The court went on to state it also found sufficient evidence beyond a reasonable doubt to sustain the battery and resisting charges of counts 3 and 4.

The minor's counsel then indicated he still intended to put on evidence in the minor's defense and stated he disagreed with the court's ruling about the present ability to apply force. The court allowed the minor to testify on his own behalf regarding self-defense.

When defense counsel challenged the court's findings as to count 1 and argued there was no present ability to apply force, the court responded by saying, "[u]se of a knife can certainly result in the application of force." Later, the court said, "He had a knife in his hand and he was a few feet away. If somebody hadn't closed the door, if his mother hadn't grabbed him." The court stated it did not agree with the minor's counsel's contention there was no present ability to cause injury.

After hearing the minor's testimony, the court again stated the charges in count 1 had been proved beyond a reasonable doubt and found the minor was not acting in self-defense. Therefore, the court reiterated its true finding as to counts 1, 3 and 4. The minutes of the court reflect the court's true finding on the serious felony allegation. Viewing the record as a whole, it is apparent the court intended to and did enter true findings as to the serious felony allegation.

11

Assault with a deadly weapon may constitute a serious felony under section 1192.7, subdivision (c)(23), if the individual "personally used a deadly or dangerous weapon in the commission of the offense." (*People v. Equarte* (1986) 42 Cal.3d 456, 465.) " 'Use' means, among other things, 'to carry out a purpose or action by means of,' to 'make instrumental to an end or process,' and to 'apply to advantage.' " (*People v. Chambers* (1972) 7 Cal.3d 666, 672.) A victim need not perceive a weapon for it to support a use enhancement. " 'To excuse the defendant from this consequence merely because the victim lacked actual knowledge of the [weapon's] deployment would limit the statute's deterrent effect for little if any discernible reason.' [Citation.] 'At its core the statute addresses the pervasive and inherent escalation of danger which arises from the *defendant's act* of deployment." (*People v. Thiessen* (2012) 202 Cal.App,.4th 1397, 1405, quoting *People v. Granado* (1996) 49 Cal.App.4th 317, 327.)

In this case, there was substantial evidence to support the juvenile court's true finding that use of a knife constituted use of a dangerous or deadly weapon for the section 1192.7, subdivision (c)(23), serious felony allegation. There is no question the minor obtained a knife and headed to the garage where he intended to stab his brother. He admitted as much to the 911 operator. The fact his mother grabbed him and held his arms down before he could complete the act does not discount his act of deployment of the weapon as part of the assault.

## II

### *No Abuse of Discretion in Denying Reduction of Count 1*

A violation of section 245, subdivision (a)(1), is a wobbler offense in which a court has the discretion to sentence the crime as either a felony or a misdemeanor. (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 974.) When considering a motion to reduce a wobbler crime to a misdemeanor, the court may consider factors relevant to sentencing decisions such as " 'the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or his traits of character as evidenced by his behavior and demeanor at the trial.' " (*Id.* at p. 978.) Where appropriate, the court may also consider general objectives of sentencing such as those set forth in rule 4.410 of the California Rules of Court, which include, among other factors, "[p]rotecting society," "[p]unishing the defendant," and "[e]ncouraging the defendant to lead a law-abiding life in the future and deterring him or her from future offenses."

A court has broad discretion under section 17, subdivision (b), in deciding whether to reduce a wobbler offense to a misdemeanor. (*Alvarez, supra*, 14 Cal.4th at p. 977.) We will not disturb the court's decision on appeal unless the party attacking the decision meets its burden to clearly show the decision was irrational or arbitrary. (*Ibid*.) Absent such a showing, we presume the court acted to achieve legitimate sentencing objectives. (*Id*. at pp. 977-978.) We will not reverse the court's decision " 'merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor

13

warranted in substituting its judgment for the judgment of the trial judge." ' " (*Id.* at p. 978.)

In this case, the court heard the testimony of the witnesses and made true findings as to count 1 and the serious felony allegation. The court acknowledged the brother testified he was never in any sort of fear or sustained fear, which is why the court dismissed count 2 for criminal threats. However, the court indicated the seriousness of the offense in which the minor had a knife in his hand just feet from where his brother was located, which could result in the application of force. At the conclusion of the hearing, after lengthy arguments about the court's findings and the evidence, the minor's counsel asked if the court would designate count 1 as a misdemeanor. The court responded, "No." There is no indication the court's decision to deny the request to reduce count 1 to a misdemeanor was irrational or arbitrary and the minor has not shown to the contrary.

## III

### *Section 654 Stay on Count 4*

Section 654 bars multiple punishment for convictions arising from " 'the same act or course of conduct.' " (*People v. Correa* (2012) 54 Cal.4th 331, 336-337.) Although a single act or course of conduct may result in multiple convictions (§ 954), "the trial court must stay execution of sentence on the convictions for which multiple punishment is prohibited" by section 654. (*Correa*, *supra*, at p. 337.) " 'A trial court's implied finding that a defendant harbored a separate intent and objective for each offense will be upheld

14

on appeal if it is supported by substantial evidence.' " (*People v. Racy* (2007) 148 Cal.App.4th 1327, 1336-1337.)

The judge who heard the evidence at the adjudication hearing was not asked to stay count 4 pursuant to section 654. The request was made at the disposition hearing before another judge. The disposition judge merely stated section 654 did not apply and found the confinement period of four years and eight months.

We conclude there is no substantial evidence to support an implied finding the defendant harbored a separate intent and objective for counts 3 and 4. The resisting and battery incidents occurred in one course of conduct as the minor attempted to remove himself from the police vehicle. The minor unbuckled himself from the seat in the patrol car and attempted to get his handcuffs in front of him. When an officer attempted to restrain him to replace the seat belt, the minor began swearing and spit at the officer. Based on the evidence, we conclude punishment for resisting a peace officer (count 4) should be stayed pursuant to section 654.

DISPOSITION

We affirm the true findings. However, because we conclude the punishment for count 4 must be stayed pursuant to section 654, we remand the matter for further disposition consistent with our decision.

MCCONNELL, P. J.

WE CONCUR:

AARON, J.

PRAGER, J.*

---

\*     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16