Filed 1/8/26  P. v. Gonzales CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>BENNY BENITO GONZALES,<br><br>  Defendant and Appellant. | F088558<br><br>(Super. Ct. No. F23906810)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Jonathan B. Conklin, Judge.

William Wei Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Dina Petrushenko and Jeffrey D. Firestone, for Plaintiff and Respondent.

-ooOoo-

Defendant Benny Benito Gonzales was convicted by a jury of assault with a firearm and other offenses after he chased an ex-gang member with a gun and threatened to shoot him.  He was sentenced to an aggregate term of 19 years in prison.  He contends

on appeal insufficient evidence supports his conviction of assault with a firearm.  We reject his argument and affirm.

## STATEMENT OF THE CASE

Defendant Benny Benito Gonzales was charged in an information with assault with a firearm (Pen. Code,[1] § 245, subd. (a)(2); count 1), making a criminal threat (§ 422; count 2), possession of a firearm by a felon (§ 29800, subd. (a)(1); count 3), and conspiracy to dissuade a witness (§ 136.1, subd. (c)(2); count 4).  He was charged in the same information with a codefendant, Emily Andrade, whose appeal we decided in a separate opinion.  (*People v. Andrade* (July 23, 2025, F087955) [nonpub. opn.].)

As to each count, the information alleged that Gonzales committed the offense for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(1)) and that Gonzales personally used a firearm in the commission of counts 1 and 2 (§ 12022.5, subd. (a)).  The information further alleged that Gonzales had previously suffered a prior serious felony conviction (§ 667, subd. (a)(1)) as well as a strike conviction under the Three Strikes law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)).

The jury convicted Gonzales on counts 1 through 3 and acquitted him on count 4.  The jury also found true that he personally used a firearm in the commission of counts 1 and 2.

At the conclusion of the next phase of the trial on the gang enhancement allegations, the jury found it true that Gonzales committed each offense for the benefit of, at the direction of, or in association with a criminal street gang.

Following the verdicts on the gang allegations, the trial court conducted a court trial and found true two aggravating circumstances.

---

[1] Subsequent statutory references are to the Penal Code.

At sentencing on August 23, 2024, the trial court imposed the low term of two years for assault with a firearm, doubled to four years because of the prior strike. The trial court enhanced the sentence by the upper term of 10 years for the gang enhancement allegation, and enhanced it by another five years for the prior serious felony conviction. The trial court also imposed but stayed the upper term of 10 years for the firearm enhancement under section 654.

On count 2, the trial court imposed but stayed under section 654 the doubled low term of 32 months. On count 3, the court imposed the doubled low term of 32 months, plus the upper term of four years for the gang enhancement allegation, and ordered the term to run concurrently to the term imposed on count 1.

Gonzales's aggregate sentence was therefore 19 years.

## FACTS

Gonzales is a member of the Huron Parkside Norteños gang. The victim, D., who is male, dropped out of the Norteños gang. The gang's members are required to do violence on any dropout they encounter, and "snitches" must be killed.

In the afternoon on May 4, 2023, D., his stepsister A., and A.'s 16-year-old nephew drove into the parking lot of an apartment complex in Huron. A. was driving, and she drove past a dark blue SUV parked in front of one of the apartments. Gonzales was inside the SUV, and he began to "mean mug" A., meaning he gave her a "mean glare."

Gonzales got out of the SUV and pulled a semiautomatic handgun from his waistband. A. told D. and her nephew to get out of the car because Gonzales was approaching, which they did. A. and D. both saw Gonzales rack the slide of the gun backwards, "putting the firearm in a position ready to fire."

Gonzales began chasing D. and A.'s nephew while saying, "I'll shoot you, dropout." After chasing D. and A.'s nephew, Gonzales fled through the parking lot of the

complex and jumped over a fence.  D. spoke to law enforcement at the complex and appeared nervous and scared.

## DISCUSSION

Gonzales challenges the sufficiency of the evidence supporting his assault with a firearm conviction.

### I.     Sufficiency of the evidence

#### A.     Standard of review

In reviewing the sufficiency of evidence to support a conviction, we examine the entire record and draw all reasonable inferences therefrom in favor of the judgment to determine whether it discloses substantial credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  (*People v. Brooks* (2017) 3 Cal.5th 1, 57.)  We do not reweigh the evidence or witness credibility. (*People v. Albillar* (2010) 51 Cal.4th 47, 60 (*Albillar*); see *People v. Young* (2005) 34 Cal.4th 1149, 1181 ["Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact."].)

We must accept logical inferences that the trier of fact might have drawn from the evidence even if we would have concluded otherwise.  (*People v. Streeter* (2012) 54 Cal.4th 205, 241, overruled on other grounds as stated in *People v. Harris* (2013) 57 Cal.4th 804, 834.)  "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding."  (*Albillar*, *supra,* 51 Cal.4th at p. 60.) If more than one inference may reasonably be derived from the evidence, we accept the inference supporting the judgment.  (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

#### B.     Elements of assault with a firearm

An assault is "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.)  The crime of assault with a deadly weapon requires proof of the basic crime of assault, plus proof that it was accomplished

by use of a deadly weapon. (CALCRIM No. 875; see § 245.) Assault is a general intent crime that does not require a specific intent to injure the victim or a subjective awareness of the risk that an injury might occur. (*People v. Williams* (2001) 26 Cal.4th 779, 788, 790.)

To convict a defendant of assault with a firearm, the People must prove: (1) the defendant did an act with a firearm that by its nature would directly and probably result in the application of force to a person, (2) the defendant did that act willfully, (3) when the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone, and (4) when the defendant acted, he had the present ability to apply force with a firearm to a person. (CALCRIM No. 875; see § 245, subd. (a)(2).)

### C. Sufficient evidence supports the conviction

Gonzales contends insufficient evidence supports his conviction for assault with a firearm. He emphasizes that no evidence shows he pointed or aimed his gun at D., or that he tried striking D. with the gun. He acknowledges, however, that "it is not necessary to actually point the gun directly at the other person to commit" assault with a firearm. (*People v. Raviart* (2001) 93 Cal.App.4th 258, 263 (*Raviart*).) He argues that the facts here are distinguishable from cases where the court upheld an assault with a firearm conviction despite the defendant not pointing the gun at the victim. We disagree. The evidence amply supports each element of the offense.

### 1. The controlling principle

The law is well established that a defendant need not point a gun directly at the victim to commit assault with a firearm. In *People v. McMakin* (1857) 8 Cal. 547 (*McMakin*), our Supreme Court held that assault occurs when a defendant brings a gun into a position where it could be used in an instant, coupled with circumstances demonstrating intent to use force. The court stated: "Holding up a fist in a menacing manner, drawing a sword or bayonet, *presenting a gun at a person who is within its*

*range*, have been held to constitute an assault. So any other similar act, accompanied by such circumstances as denote an intention existing at the time, coupled with a present ability of using actual violence against the person of another, will be considered an assault." (*Id.* at p. 548, italics added.) The court added, "The drawing of a weapon is generally evidence of an intention to use it." (*Id.* at p. 549.)

In *McMakin*, the victim was riding on horseback across land that was in dispute between the parties, when he was intercepted by the defendant. (*McMakin, supra,* 8 Cal. at p. 547.) The defendant drew a revolver and threatened to shoot the victim if he did not leave the land. (*Ibid.*) The defendant held the revolver in a perpendicular line with the victim's body, but the gun was pointed down such that the bullet would strike the ground before reaching the victim, if the gun were fired. (*Ibid.*) The victim turned his horse and rode off, and the defendant did not pursue him. (*Ibid.*) The Supreme Court affirmed the conviction for assault with a deadly weapon, holding there was sufficient evidence of intent because the defendant "put himself in a position to use the weapon in an instant, having only to elevate the pistol and fire, at the same time declaring his intention to do so[.]" (*Id.* at p. 547.)

The principle established in *McMakin* is this: Assault with a firearm occurs when the defendant brings the weapon into a position where it could be used in an instant and takes action demonstrating intent to apply force to the victim; direct pointing is not required.

Subsequent cases have consistently applied this principle. In *Raviart, supra,* 93 Cal.App.4th 258, the court upheld two assault convictions where the defendant drew his gun with intent to shoot two officers but pointed the gun directly at only one of them. (*Id.* at pp. 262, 264–265, 267.) The court stated: "By drawing the gun with the intent to shoot the officers, defendant performed an overt act sufficient to constitute an assault on both of them. Defendant did not have to perform the further act of actually pointing the gun directly at Officer Wagstaff to be guilty of assaulting Wagstaff. It was enough that

6.

defendant brought the gun into a position where he could have used it against Wagstaff if the officers had not shot him first." (*Id.* at p. 266.)

Similarly, in *People v. Thompson* (1949) 93 Cal.App.2d 780 (*Thompson*), the defendant pointed a gun toward two sheriff's deputies, aiming between them and toward the ground. (*Id.* at pp. 781–782.) The appellate court held sufficient evidence supported convictions for two counts of assault with a deadly weapon, noting that while the defendant "did not point the gun directly at [the deputies] or either of them, it was in a position to be used instantly." (*Id.* at p. 782.)

In *People v. Chance* (2008) 44 Cal.4th 1164 (*Chance*), the California Supreme Court clarified that a defendant need not have the ability to inflict injury instantaneously to be guilty of assault. (*Id.* at p. 1168.) There, the defendant was awaiting a pursuing police officer with a firearm that had rounds in the magazine but none in the chamber. He also was pointing the gun in the wrong direction, away from the pursuing officer. (*Id.* at pp. 1168–1169.) The defendant argued he "lacked the present ability to commit assault because his conduct did not immediately precede a battery." (*Id.* at p. 1167.) The Court disagreed, explaining that "an assault may be committed even if the defendant is several steps away from actually inflicting injury, or if the victim is in a protected position so that injury would not be 'immediate,' in the strictest sense of that term." (*Id.* at p. 1168.)

These cases establish the governing framework: To prove assault with a firearm where the gun was not pointed directly at the victim, the prosecution must show (1) the defendant brought the weapon into a position where it could be used against the victim instantly, and (2) the defendant demonstrated through his conduct an intent to apply force to that particular victim. This intent can be shown through verbal threats directed at the victim, pursuit or advancement on the victim with the weapon, positioning the weapon toward the victim, or similar conduct directed at the specific victim.

7.

### 2. Application to this case

The evidence here satisfies each element of assault with a firearm under CALCRIM No. 875.

First, Gonzales did an act with a firearm that by its nature would directly and probably result in the application of force to a person. He racked the slide of his semiautomatic handgun, which brought a round into the chamber and placed the gun in a position ready to fire. He then chased D. while threatening, "I'll shoot you, dropout." The act of pursuing a victim with a loaded, chambered firearm while threatening to shoot him is conduct that by its nature would directly and probably result in the victim being shot. The evidence supports a reasonable inference that Gonzales pursued D. to get in a better position to carry out his threat.

Second, Gonzales acted willfully when he drew the gun, racked the slide, and chased D. with the weapon. There is no dispute regarding this element.

Third, when Gonzales acted, he was aware of facts that would lead a reasonable person to realize his conduct would directly and probably result in the application of force. Gonzales knew he had drawn his gun, racked the slide to chamber a round, and was chasing D. while threatening to shoot him. A reasonable person would realize that pursuing someone with a loaded firearm while threatening to shoot would directly and probably result in shooting that person.

Fourth, Gonzales had the present ability to apply force with the firearm. The jury could reasonably infer from Gonzales's racking of the slide and his threat to shoot D. that the gun was loaded with a round chambered and ready to fire. (*People v. Penunuri* (2018) 5 Cal.5th 126, 147 ["the fact that the gun was loaded may be inferred from circumstantial evidence"].) D. was also close enough to Gonzales to see the gun, supporting an inference that he was within range. Gonzales could have shot D. in an instant by raising the gun and pulling the trigger.

The evidence demonstrates that Gonzales brought his gun into a position where he could use it against D. instantly and took overt action—the pursuit and the threat to shoot—demonstrating his intent to carry out his threat. As the court explained in *People v. Hunter* (1925) 71 Cal.App. 315, 319, when a defendant threatens to kill someone and takes steps to carry out that threat with a deadly weapon, "the actual transaction had commenced which would have ended in [violence] if it had not been interrupted." Here, Gonzales's pursuit of D. with a loaded gun was the commencement of that transaction, interrupted only by D.'s successful flight.

### 3. Gonzales's arguments are unpersuasive

Gonzales contends the evidence shows only that he brandished the weapon and threatened D., not that he attempted to commit a violent injury. This argument fails to acknowledge the distinction between mere brandishing and assault. Brandishing involves the rude, angry, or threatening display of a weapon, whereas assault requires conduct that by its nature would directly and probably result in the application of force—an act that moves beyond threatening display toward actual violence. (CALCRIM Nos. 875, 983 [brandishing a firearm or deadly weapon instruction]; § 417, subd. (a)(1)–(2) [brandishing statute].)

Gonzales did not simply display his weapon while standing still. He racked the slide to prepare the gun to fire, then chased D. while threatening to shoot him. The chase itself was an overt act demonstrating an attempt to apply force. The reasonable inference from this conduct is that Gonzales was attempting to get close enough to shoot D., and only D.'s escape prevented completion of the violent act.

Gonzales emphasizes that he never pointed the gun directly at D. and had ample opportunity to shoot but did not. But as *McMakin*, *Thompson*, and *Raviart* instruct, pointing the gun directly at the victim is not required. What matters is whether the defendant brought the weapon into a position where it could be used instantly and took action demonstrating intent to use it. Here, Gonzales did both. The fact that he did not

9.

fire the weapon does not negate the assault; it simply means D. successfully evaded him before Gonzales could complete the violent act he had begun.

Substantial evidence supports the assault conviction.

## II.     Abstract of judgment

We notice an error in Gonzales's abstract of judgment.  The term imposed on count 3 was ordered to run concurrently, but the abstract of judgment reflects that the term was stayed under section 654.  This error must be corrected.

## DISPOSITION

The judgment is affirmed.  The superior court clerk is directed to prepare an amended abstract of judgment reflecting that the term imposed on count 3 was ordered to run concurrently.  The clerk is further directed to forward certified copies of the amended abstract to the appropriate entities.

SNAUFFER, J.

WE CONCUR:

DETJEN, Acting P. J.

MEEHAN, J.

10.